2009 Ark. App. 245

**April KRASS, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 08–1005.**

Court of Appeals of Arkansas.

April 8, 2009.

Deborah R. Sallings, Arkansas Public Defender Commission, Little Rock, for appellant.

No response.

JOHN MAUZY PITTMAN, Judge.

This is an appeal from an order terminating appellant's parental rights to two minor children, C.K. and D.K. Appellant's attorney has filed a motion to be relieved as counsel pursuant to *Linker–Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004), asserting that there are no issues of arguable merit to support the appeal. Counsel's motion was accompanied by a brief listing all adverse rulings made at the termination hearing and explaining why there is no meritorious ground for reversal to each ruling, including a discussion of the sufficiency of the evidence to support the termination order. *See Lewis v. Arkansas Department of Human Services,* 364 Ark. 243, 217 S.W.3d 788 (2005); *see also* Ark. Sup. Ct. R. 6–9(i)(1), *In re Rules of the Supreme Court and Court of Appeals, Rules 6–9 and 6–10,* 374 Ark. Appx. 576, (2008). The clerk of this court sent a copy of counsel's brief and motion to appellant, informing her that she had the right to file *pro se* points for reversal. Appellant did not submit any *pro se* points.

The children were taken into protective custody on November 28, 2006. The petition for emergency custody was based on an attached affidavit. The affidavit stated that the family service worker was called to the Krass residence in Hot Springs on November 28, 2006. Living in the home were the mother, April Krass; the father, James Krass II; seven-year-old D.K., who is the son of April and James Krass II; and twelve-year-old C.K., the daughter of April Krass. The affidavit continued as follows:

The worker questioned C.K. about alleged sexual improprieties inflicted on her by her step-father, James Krass II. The girl told the worker that her step-father had been performing both oral and digital penetration of her vagina since she was eight years of age on a regular basis. The last time this alleged abuse took place was on November 24, 2006, while her mother was out of the house. April Krass told the worker that C.K. had informed her of her step-father's sexual activity with her on or about the 24th of November. She said that she intended to have the child seen by a doctor to confirm the sexual abuse, but that it was around the Thanksgiving holiday and that she had been unable to secure a doctor's appointment. When asked why the child was not taken to an emergency room, the mother responded that this idea did not occur to her. While at the home, the worker came to the conclusion that the children were in imminent danger of serious injury and for their health, safety, and welfare, took both of them into custody.

After determining that there was probable cause to support these allegations and to support the emergency removal of the children, the trial court held an adjudication hearing on January 10, 2007, where it was found that removal was in fact caused by the emergency described in the petition, that the emergency continued to exist, and that it was in the best interest of the children to remain in foster care. No appeal was taken from that order.

A case plan was developed that required April and James Krass II to submit to psychological testing and counseling, and to participate in counseling and therapy. James Krass II was uncooperative. Despite the unappealed finding of sexual abuse, he denied that such abuse had occurred and refused to participate in counseling, complete parenting and anger management classes, submit to random drug testing when requested, maintain meaningful contact with the children, or pay child support pursuant to the court's order. April Krass partially complied with the order and obtained psychological testing, individual counseling, and family counseling during supervised visitation with the children. Although the fact of abuse had been founded and was not appealed from, psychological examination showed that April Krass was convinced that the accusations of sexual abuse were unfounded; she was "dogmatically supportive" of her husband and showed no desire to understand or sympathize with her daughter, who she believed was maliciously lying. Because April Krass was completely closed to believing that her husband had in fact committed the abuse, and because she committed a breach of trust by surreptitiously making an audiotape of a counseling session, individual therapy was terminated in July 2007. Group therapy was also terminated because April Krass's persistent refusal or inability to empathize with her daughter by even considering the possibility that she was telling the truth was causing the child additional harm and distress. Consequently, more than one year after the children had been removed, a petition to terminate parental rights was filed alleging that April Krass had failed to remedy the condition causing removal, *i.e.*, her failure to protect her daughter from sexual abuse.

At the termination hearing, the evidence showed that, because they had offered statements regarding the facts of the abuse, both of the children feared that they would be abused or harmed by the noncompliant James Krass II were they to be returned to the home. Efforts to reconcile April Krass with her daughter were utterly unsuccessful. At the request of and in the presence of a counselor, C.K.

again confronted her mother with the details of the abuse. She expressed her hurt at her mother's indifference when C.K. first told her that she had been abused and pled with her mother to understand and be supportive. Despite her daughter's pleas and tears, April Krass displayed a very flat affect, showing no emotion. Although the counselor explained that, even if April Krass did not believe the abuse occurred it was crucial that she remain emotionally available and supportive, April Krass showed no concern for her daughter's distress. Despite their traumatization, both children have made great strides in therapy and are very adoptable. C.K. displayed courage and insight beyond her years by showing empathy for her abuser. There is every reason to believe that these children will benefit greatly from being placed in a loving home.

There was overwhelming evidence that April Krass had failed to rectify the conditions causing removal. By her own testimony at the hearing, April Krass intended to continue exposing the children to James Krass II without regard to the fears or safety of the children because she was dependent upon him for transportation, although she had never asked the Department for transportation assistance, and despite having been told by a caseworker that continued contact with the named offender would make reunification impossible. And, although April Krass testified at the hearing that she was separated from the abuser and was beginning, possibly, to believe that some form of sexual abuse might have taken place, these were last-minute developments that occurred at the time the case goal was changed from reunification to termination of parental rights.

In light of the foregoing, we hold that any appeal from the order of termination would be frivolous. At best, appellant demonstrated that she possibly made some partial, last-minute progress toward rectifying the condition causing removal. However, evidence of last-minute progress provides no grounds for reversal. In *Trout v. Arkansas Department of Human Services,* 359 Ark. 283, 197 S.W.3d 486 (2004) (reversing *Trout v. Arkansas Department of Human Services,* 84 Ark.App. 446, 146 S.W.3d 895 (2004)), and *Camarillo–Cox v. Arkansas Department of Human Services,* 360 Ark. 340, 201 S.W.3d 391(2005) (reversing *Camarillo–Cox v. Arkansas Department of Human Services,* 87 Ark.App. 35, 185 S.W.3d 133 (2004)), the Arkansas Supreme Court overturned reversals of termination proceedings by this court on the grounds that evidence of such eleventh-hour improvement need not be credited by the trial court and will not be held to outweigh evidence of prior failure or noncompliance. It is noteworthy that both of the above-cited cases involved last-minute separations by mothers from child abusers.

Furthermore, it cannot reasonably be argued that the services offered by the Department to reunite appellant with her children were inadequate. Instead, it is clear that these efforts simply could not prevail in the face of appellant's unwillingness or inability to consider that her husband had sexually abused her daughter. Given appellant's destruction of the therapist-patient relationship by attempting to make secret audiotapes of the sessions, her unrelenting and dogmatic refusal during therapy to so much as consider the possibility that her daughter was not lying about the sexual abuse, and the uncontradicted evidence that the rejection exemplified by her refusal or inability to empathize was causing her daughter additional emotional harm, it is incontestable that appellant was resistant to therapy and that no further treatment would have been effective; appellant responded only to the threat of imminent termination of her pa-

rental rights more than one year after the children had been removed from her home.

Nor do the evidentiary rulings decided contrary to appellant provide any arguable grounds for appeal. All of the contested evidence, including the taped interview of D.K., was offered in an attempt to cast doubt on the trial court's finding in the adjudication order | ₇that sexual abuse occurred, or to show that the evidence was sufficiently dubious that appellant was reasonably justified in refusing to consider that it might in fact have taken place. However, it is elementary that, in termination cases, a challenge to the finding of abuse must be made, if at all, in an appeal from the adjudication hearing. *Dowdy v. Arkansas Department of Human Services*, 2009 Ark.App. 180, —— S.W.3d ——; *see* Ark. R.App. P. —— Civ. 2(c)(3)(A). The law is crystal clear that we are precluded in this appeal from reviewing adverse rulings from the adjudication, review, or permanency-planning hearings. *Lewis v. Arkansas Department of Human Services*, 364 Ark. 243, 217 S.W.3d 788 (2005). For purposes of this appeal, the fact of sexual abuse is conclusively established.[1] No rational person could argue otherwise.

Furthermore, it is irrelevant whether April Krass acted reasonably[2] in choosing to believe her husband rather than her daughter. It was established by expert testimony—and this is no more than common sense to any parent—that it was not necessary for April Krass to *believe* her daughter, but that it was essential that she show the child love and concern | ₈and remain emotionally available to her in light of her obvious and profound distress. This April Krass manifestly failed to do. Instead, her withdrawal of support, icy demeanor, and dogmatic adherence to her belief in her husband's denials were acts of abandonment that caused her daughter additional and incalculable harm. That she continued in this rigid adherence to her husband's excuses after the fact of sexual abuse had been established at the adjudication hearing, and corroborated by her husband's angry refusal to participate in any of the reunification services, demonstrates the depth of her own need and the extent to which she put her own desires ahead of the welfare of her children. The evidence most favorable to April Krass, given by a social worker who continued to work with her throughout the process, was that she needed to accept the seriousness of the abuse and the need to protect her children from the abuser, and that, while she had begun to make some progress toward that goal at the time of the permanency planning hearing, she was not yet ready to assume her parental responsibility and needed more time to do so. But such last-minute progress is commonplace in termination cases, and any appeal based on evidence of such progress would be unavailing. *Trout v. Arkansas Department of Human Services, supra.*

Based on our examination of the record and the brief presented to us, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit motions in termination cases, and we hold that the

---

1. Evidence intended to cast doubt on the fact of abuse could have no relevance to the issues before the court at the termination hearing, *i.e.*, whether April Krass had remedied the conditions causing removal. Only evidence material to the issues on appeal need be included in the abstract and addendum. Ark. Sup. Ct. R. 6–9(e)(2)(C).

2. Her steadfast refusal to accept the possibility that abuse could have occurred was based chiefly on the lack of forensic evidence. We note in this regard that appellant failed, when her daughter reported the abuse to her, to take any action that would provide such evidence, such as taking the child to a doctor's office or emergency room.

appeal is wholly without merit. Accordingly, we grant counsel's motion to withdraw and affirm the order terminating appellant's parental rights.

Affirmed.

GLADWIN, HENRY, and BROWN, JJ., agree.

HART and BAKER, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting.

Despite the majority's heavy-handed efforts to demonize Ms. Krass, the simple fact is that the record in this case is completely devoid of even a suggestion that Ms. Krass in any way abused her children or that Ms. Krass was even *aware* of any abuse at the time that it allegedly took place. Moreover, the record indicates that Ms. Krass had good reason to doubt that the alleged abuse actually took place.

The so-called abuse about which the majority rails is merely an allegation made by the now nearly fifteen-year-old alleged victim, C.K., against her now former stepfather. Despite the trial judge's repeated efforts to keep this information out of the record, we know that these allegations were belied by the physical evidence. For instance, the alleged victim claimed that her ex-stepfather had repeatedly subjected her to full penetration sex, yet a forensic medical examination revealed that she had a "normal" hymen, and despite her claims that her ex-stepfather had caused her room to "smell like sperm," crime scene investigators were unable to recover any physical evidence in that room.

Furthermore, Ms. Krass proffered testimony that C.K. had recanted to two of her friends, and Ms. Krass also managed to get into the record that she knew her daughter had a propensity for prevarication. A taped interview of D.K., C.K.'s now ten-year-old brother, was purported to be corroboration of C.K.'s allegations, but on cross-examination, it was revealed that D.K. never professed to witness any sexual abuse.[1]

Additionally, C.K.'s former counselor, Donna Sheppard, who is no longer practicing in that field, revealed on cross-examination that C.K. was surprised and angered when she found out that her stepfather was not her biological father. Only then did C.K. make her allegations. It was also revealed at the hearing, much to the trial judge's obvious irritation, that the Garland County prosecuting attorney had declined to prosecute the alleged perpetrator.[2] Nonetheless, the trial court found—and the majority has concurred— that ADHS had made reasonable efforts to rehabilitate Ms. Krass because it had offered Ms. Krass counseling that required her to believe allegations that were directly contradicted by the medical evidence and to "support" C.K. in making these allegations. But the most disturbing aspect of this scenario is that Ms. Krass was summarily dismissed from this "counseling" when she did not immediately subscribe to these requirements.

---

1. The tape was introduced into evidence and included in the record, but not abstracted or copied for the addendum. The majority does not explain why this violation of the requirements set out in Supreme Court Rule 6–9 does not mandate rebriefing, as is routinely the case in criminal cases where Rule 6–9's counterpart, Rule 4–3, governs.

2. In a manner customary to similar inquisitions in seventeenth century Salem, Massachusetts, the trial judge stated: "[Y]ou do not need forensic evidence or medical evidence that nationally *we* have many times had convictions without that. [sic] Just because this particular county doesn't follow what is the national best practice I don't see how that's relevant at all." (Emphasis added.)

But the story gets worse. It seems that the counseling sessions conducted by Sheppard and her erstwhile employer involving Ms. Krass and her children were terminated after the so-called "taping incident." Apparently, Ms. Krass had become so concerned about how the so-called "therapy" sessions were being conducted that she decided to surreptitiously tape a session. When Ms. Krass attempted to use a transcript of the session to impeach Sheppard at the termination hearing, the trial judge prodded the attorney ad litem and the attorney for ADHS into objecting.[3] Perhaps not surprisingly, when those officers of the court got around to offering an objection, the trial judge sustained it. I cannot accept that it was wholly frivolous to argue that it was an abuse of discretion to prevent Ms. Krass's trial counsel from impeaching the witnesses who testified that the only efforts that ADHS made to "rehabilitate" Ms. Krass would be futile and even counter-productive.

However, there is more. The trial judge, through more than a half-dozen evidentiary rulings, many made *sua sponte*, denied Ms. Krass the right to even present her case in anything approaching a cohesive fashion. It was Ms. Krass's theory of the case that her actions in not embracing her now former daughter's accusations were rationally based, therefore her dismissal from counseling could not be ascribed to simple recalcitrance. However, the trial judge apparently concluded that any evidence that did not support termination of Ms. Krass's parental rights was "not relevant." I disagree with the majority's dismissal of these evidentiary rulings as being merely an effort to attack the adjudication. These rulings comprehensively denied Ms. Krass her right to put on a case in defense of ADHS's effort to strip her of her parental rights. The record is clear that Ms. Krass at least physically availed herself of every so-called reunification service that was foisted upon her. She did not quit the counseling, the counseling quit her when she did not join in the counselor's blatant advocacy of C.K.'s abuse allegations. I submit that an argument challenging the adequacy of the so-called "services" offered by ADHS would not be wholly frivolous.

In *Adams v. Arkansas Department of Health and Human Services*, 375 Ark. 402, 291 S.W.3d 172 (2009), the supreme court recently stated what it believed to be the procedural blueprint promulgated in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), the seminal case that its progeny, *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), purports to follow. The *Adams* court stated:

[Counsel's] role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might *arguably* support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the *court*—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is *wholly frivolous*. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as

3. The trial judge asked, "Now are you guys going to agree to admit this even though it was with unclean hands obtained?"

federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds *any* of the legal points *arguable on their merits* (and therefore *not frivolous*) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

(Emphasis added.) With the instant case becoming the new definition of what errors may be considered "wholly frivolous," we have indeed moved into a new era of constitutional law in termination-of-parental-rights cases. The fact that the majority has found it necessary to advocate so passionately for the termination of Ms. Krass's parental rights certainly begs the question about whether we should have allowed this case to be submitted in no-merit format.

KAREN R. BAKER, Judge, dissenting.

I would order rebriefing in this case for two reasons. First, because the taped interview of D.K. was not included in appellant's abstract or addendum, we are unable to conduct the full examination required to decide whether the case is wholly frivolous. *Campbell v. State,* 74 Ark.App. 277, 47 S.W.3d 915 (2001). Second, I do not believe that appellant's brief sets out why any adverse rulings would not arguably support an appeal.

In reaching this conclusion, I do not find that the trial court erred. Such a finding is not necessary prior to ordering rebriefing of a no-merit case. In order to determine that an appeal is wholly without merit, or so frivolous that it may be decided without any adversary presentation, we need not determine whether error was committed, but only that the case is not wholly frivolous. "Wholly without merit" or "wholly frivolous" are the standards we must apply in no-merit cases. *Justus v. State,* 96 Ark.App. 29, 237 S.W.3d 528 (2006).

Numerous evidentiary rulings in this case were decided adversely to the appellant. I do not believe that the no-merit brief filed in this case adequately explains why none of these rulings would arguably support an appeal. While I do not find that the trial court's adverse rulings constitute an abuse of discretion, neither can I find that an appeal of the trial court's decisions regarding admission or rejection of evidence propounded by appellant is "wholly without merit." Therefore, I respectfully dissent.