2011 Ark. App. 791

**Yolanda ANDERSON, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,**
Appellee.

**No. CA 11–804.**

Court of Appeals of Arkansas.

Dec. 14, 2011.

Deborah Ruth Sallings, Little Rock, for appellant.

CLIFF HOOFMAN, Judge.

Appellant Yolanda Anderson appeals from the order of the Pulaski County Circuit Court terminating her parental rights to her son, D.A.[1] Appellant's attorney has

1. The parental rights of D.A.'s father, Darrain Anderson, Sr., were also terminated in the

filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6–9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to Anderson, informing her of her right to file pro se points for reversal, which she has done. DHS and the attorney ad litem have declined to file briefs in response at this time. We grant counsel's motion to withdraw and affirm the ₂termination order.

Prior to the instigation of the DHS case involving Anderson's son, D.A. (DOB 6/7/07), Anderson had her other four children removed from her custody in 2006 due to severe medical neglect of one of the children. She consented to a voluntary termination of her parental rights in June 2008. After his birth in 2007, D.A. was not removed from Anderson's custody, and he was eventually dismissed from the style of that case and was not named in the 2008 termination order.

On September 9, 2009, D.A. was taken into DHS custody after his daycare reported that he had shown up with a black eye. Anderson gave inconsistent explanations as to the cause of the injury, initially stating that it was due to allergies, then later claiming that D.A. got up while she was still sleeping and must have injured himself while playing with his toys. Although Anderson indicated that D.A. had suffered the injury on September 5, 2009, she did not seek medical treatment until September 9, after the injury was reported to DHS. D.A. was adjudicated dependent-neglected in November 2009, due to abuse, because the injury had occurred while he was unsupervised and neglected by Anderson. The trial court further found that Anderson's delay in seeking medical treatment for D.A. was neglect by itself and that her testimony regarding the injury was not credible. Anderson subsequently complied with the case plan, and custody of D.A. was returned to her in September 2010. The 2009 case on D.A. was closed on December 1, 2010, after the court found that reunification had occurred.

D.A. was again taken into custody by DHS on December 3, 2010, after his day-care ₃reported on November 30 that he had come to school with bruises on both of his cheeks. The affidavit attached to the emergency petition stated that Anderson had explained to the school that the bruises were from her boyfriend, Marcus Monk, kissing on D.A.'s cheeks and that they would go away. The DHS child-abuse assessor stated in the affidavit that the bruises were still visible on December 3, even though Monk indicated that he had sucked on D.A.'s cheeks on November 29. Anderson and Monk stated that they kissed D.A. this way all the time and that the bruises were usually gone within twenty-four hours.

At the adjudication hearing on January 25, 2011, the trial court found that D.A. was at a substantial risk of serious harm due to physical abuse and parental unfitness based on the allegations in the petition and affidavit, which the court found to be true. The court also expressed its concern that this new allegation of abuse was reported to DHS on November 30, one day before the 2009 case was closed, yet the court was not informed of this new allegation at that time. The trial court stated that Anderson had been given more than one year to work toward reunification and that "the Court will continue the clock at this point." The court stated that

same proceeding; however, he is not involved in this appeal.

Anderson had initially indicated to DHS that Monk had caused the bruises by kissing on D.A., but she then testified at the hearing that she had caused the bruises by kissing him. The court found that Anderson's and Monk's explanations for the bruises on D.A. were not credible; however, even if their explanations were accurate, the court found that "putting hickies on both sides of the child's face" is "physical abuse" and "very bizarre behavior." The court further stated that it could not determine who perpetrated the abuse, Anderson or Monk, but that the bruises were intentionally caused and that Anderson had "severe credibility issues."

The trial court found by clear and convincing evidence that D.A. had been subjected to aggravated circumstances because it was unlikely that continued services to the family would result in reunification. In making this finding, the court noted that Anderson had been offered services from December 2006 until June 2008 and from September 2009 until December 2010; that she continued to lack judgment, insight, and overall parental fitness; that she had a fundamental issue involving her thought process; that she had taken two psychological evaluations; and that there was no amount of additional services that would lead to reunification. A termination hearing was set for April 2011, although the trial court continued to order that services be provided to Anderson, including a third psychological evaluation.

At the termination hearing, Jessica Warren, who was the DHS family service worker assigned to both cases involving D.A., testified that Anderson was offered services in the 2009 case, including parenting classes, supervised visitation, a psychological evaluation, counseling, and drug screening, and that she was in compliance with the case plan. However, after D.A. was returned to Anderson's custody, Warren stated that another case was opened when the child again suffered unexplained bruises to his face. According to Warren, she believed that potential harm could result to D.A. if he were returned to Anderson's custody, and she indicated there were no additional services that could be provided to Anderson to make her a fit and appropriate parent.

Dr. Paul Deyoub, a forensic psychologist, testified that he had conducted three psychological evaluations on Anderson during the three different DHS cases. He indicated that in the 2007–08 case, Anderson's four oldest children were removed due to severe medical neglect and inadequate care but that she did not take responsibility for those issues, instead claiming that she was following the doctor's orders. Dr. Deyoub stated that Anderson's evaluation at that time showed significantly elevated scores on the parenting scale and the child-abuse-potential scale. During the second case in 2009, he testified that D.A. was removed for an unexplained black eye and that Anderson's explanation was inconsistent with the injury. According to Dr. Deyoub, her second psychological evaluation continued to show significantly elevated scores in the same areas, and he stated in his report that there was a high likelihood of aggressive behavior by Anderson because of the high levels of hostility shown on the tests. Dr. Deyoub testified that between Anderson and Monk, she was the more likely aggressor. He stated that Anderson seemed inexplicably frustrated with D.A. at the time of her second evaluation and that she seemed unable to handle even caring for one child.

In the current DHS case involving D.A., Dr. Deyoub testified that both Anderson and Monk had claimed that they were only kissing on D.A.'s cheeks; however, he stat-

ed that he did not find those explanations to be credible or consistent with the injury. Dr. Deyoub stated that Anderson's third evaluation showed some improvement on several of the parenting scales but that the child-abuse-potential score was still high. He testified that he would have expected all of her elevated scores to subside after she had undergone weekly counseling sessions for one year. Further, Dr. Deyoub stated that the recent personality tests revealed that Anderson was being more defensive than during the past two tests. He testified that Anderson had not gained any insight or made any progress after receiving two years of services from DHS and that he did not recommend that D.A. be returned to her custody. According to Dr. Deyoub, he was worried that D.A. would be at risk of further harm in Anderson's custody, and without any sort of admission of responsibility by Anderson concerning these injuries, there was no treatment or services that would be effective.

Janet Norris, a DHS supervisor, testified that she had been involved in all three cases involving Anderson. Norris stated that it was in D.A.'s best interest for Anderson's parental rights to be terminated based on the history of the case and the fact that D.A. was in need of permanency. Norris further testified that Anderson's compliance with the case plan and court orders was not enough to have custody of D.A. returned, because she believed that he could suffer additional injuries in her care.

A DHS adoption specialist, Monica Spencer, testified as to D.A.'s adoptability. Spencer stated that D.A. was adoptable despite his developmental delays and that several families had been identified as potential placements for him. Spencer also testified that D.A.'s young age was a positive factor in his adoptability.

Sylvia Jones, Anderson's therapist, testified that she began seeing Anderson in 2006 and that she had made progress in her therapy during the time period of that case. Jones again began counseling Anderson in January 2011 and stated that they were working on anger and stress-management issues. According to Jones, she felt that Anderson was being honest in her explanation of D.A.'s bruises on his cheeks and that she did not realize her actions were harming her child. During their recent sessions, Jones testified that she had noticed improvement in Anderson's stress level and that she would recommend giving her more time before terminating her parental rights. Jones stated that Anderson would probably need to be monitored for three to six additional months to ensure that she was a fit and appropriate parent.

Anderson also testified. She stated that her parental rights should not be terminated because she was in the process of undergoing a lie detector test to show that she did not physically abuse D.A. Anderson testified that she did not believe that "suckling on her son's cheeks is physical abuse, especially when I've done it since he was born." She stated that she knew that this caused bruises on her son but that they would dissipate within twenty-four hours and that he never complained that it hurt. The day that D.A. was removed from her custody again, Anderson testified that both she and Monk were "suckling" on his cheeks. Regarding D.A.'s black eye in 2009, Anderson denied that she had hit him but claimed that she first noticed it when she woke up and he was already up playing with his toys. Anderson testified that she and Monk took him to the emergency room and that the doctor told them it was a broken blood vessel. Anderson further stated that she had abided by all of the court orders since

the case began and that she would do "whatever it takes" to reunify with D.A. She testified that she was ready to learn the differences between just playing with her child and physical abuse and that she would never suck on her son's face again because she was now accepting that this was considered to be abusive.

At the hearing, the trial court stated that it was taking judicial notice of the prior DHS cases involving Anderson and that it considered the current case a continuation of the 2009 ₈case since D.A.'s most recent injury actually occurred before the 2009 case was closed. After extensively reviewing the history of all three cases, the court found that Anderson had been offered numerous rehabilitative services by DHS in the past. Yet, the first case resulted in Anderson's voluntary termination of her parental rights to her oldest four children. In the 2009 case, while Anderson did participate in the services offered and eventually had D.A. returned to her custody, he was again removed shortly afterward for additional allegations of physical abuse. The trial court stated that Anderson had "severe credibility issues" and that her explanations for D.A.'s injuries were not satisfactory. The court found that Anderson clearly had a fair opportunity to regain custody of D.A., that there were no compelling reasons to give her additional time, that D.A. was in need of permanency, and that it would be a "travesty" not to seek a permanent adoptive placement for him at the earliest possible date. The trial court further found that DHS had proved its case for termination on all alleged grounds by clear and convincing evidence. An order to this effect was entered on May 18, 2011, and Anderson filed a timely appeal from this order.

In counsel's no-merit brief, she correctly notes that there were no adverse rulings at the termination hearing other than the termination order itself. Therefore, the only issue discussed by counsel is whether there is sufficient evidence to support the termination of Anderson's parental rights.

■ The rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A trial court's ₉order terminating parental rights must be based on findings proven by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3) (Supp.2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins, supra.* On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

■■ Pursuant to Ark.Code Ann. § 9–27–341(b)(3), an order terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights also must be based on a showing of clear and convinc-

ing evidence as to one or more of the grounds for termination listed in section 9–27–341(b)(3)(B), and the grounds relied on by the trial court in this case were as follows:

(i)*(a)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent.

(vii) *(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of |₁₀the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent. (ix)*(a)(3)(A)* Have subjected any juvenile to aggravated circumstances.

*(B)* "Aggravated circumstances" means: *(i)* A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification[.]

Only one ground must be proved to support termination. *Lee v. Ark. Dep't of Human Servs.,* 102 Ark.App. 337, 285 S.W.3d 277 (2008). In this case, there was, at minimum, sufficient evidence to support the aggravated-circumstances ground for termination. The trial court found in its adjudication order that D.A. was subjected to aggravated circumstances due to its finding that there was little likelihood of successful reunification if additional services were offered to Anderson. Anderson did not appeal from the adjudication order, and she is now precluded from asserting error with respect to this aggravated-circumstances finding. *Krass v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 245, 306 S.W.3d 14. In any event, there was clearly evidence to support this finding, as the DHS worker testified that there were no additional services that could be offered to make Anderson a fit and appropriate parent, and Dr. Deyoub testified that the services offered had failed to give Anderson any insight into proper parenting. Thus, there could be no meritorious argument related to the grounds for termination in this case.

The trial court's finding that it was in D.A.'s best interest for termination to occur was also not clearly erroneous. The court found that D.A. was adoptable, especially given his young age, and the evidence presented at the hearing showed that he met the requirements |₁₁of several potential families who wished to adopt, despite his developmental delays. The trial court also found that there would be potential harm in returning D.A. to Anderson, based on the two different occurrences of unexplained injuries to his face, and this finding is certainly supported by the evidence. The court found in the adjudication order that, even if Anderson's explanation for the most recent injury was true, repeatedly sucking on a child's face and causing bruises was, contrary to Anderson's assertions, physical abuse. She did not appeal from this finding of abuse and cannot now challenge it on appeal. *Krass, supra.* The trial court's decision to terminate Anderson's parental rights was not clearly erroneous, and we agree with counsel that there

would be no merit to an appeal on this basis.

 Anderson raises several arguments in her pro se points for reversal, none of which have merit. She first contends that the trial court should not have relied on the prior DHS case, in which her parental rights to her other four children were voluntarily terminated. However, Anderson did not object to the trial court taking judicial notice of her previous DHS cases, and her argument is therefore not preserved for appeal. *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, 389 S.W.3d 627. Moreover, evidence that Anderson's other children had previously been adjudicated dependent-neglected was appropriate for the trial court to consider in this case. *See* Ark.Code Ann. § 9–27–341(a)(3)(B)(vi) *(a)*.

 Anderson also argues that she has never harmed any of her children while playing with them and that it is not in her "heart" to punish them for any reason; that she has been the only one taking care of D.A. since his birth, without any help from his father; and that she was never taught in parenting classes that "suckling" on her child's face was physical abuse. None of these arguments support reversal of the termination order in this case. The trial court specifically found that Anderson had "severe" credibility issues regarding her explanations for D.A.'s injuries, and this court defers to the trial court in such matters. *Dinkins, supra.* Furthermore, as mentioned previously, Anderson did not appeal from the trial court's finding in the adjudication order that leaving bruises on her child's face by repeatedly sucking on his cheeks was in fact physical abuse. *Krass, supra.* Therefore, we affirm the trial court's order of termination and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN and ROBBINS, JJ., agree.