SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-13-392

| | |
|---|---|
| JESSICA AGUILERA | **Opinion Delivered** September 18, 2013 |
| APPELLANT | |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. J-2011-832-3] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

**ROBIN F. WYNNE, Judge**

Jessica Aguilera appeals from an order terminating her parental rights to her son, A.A., born 4/4/11.[1] She argues on appeal that the trial court erred by incorporating into the record all prior testimony in the case and that termination of her parental rights is not supported by the record because she was current on her child support at the time of the termination hearing; she had remedied the issue causing removal by filing for divorce from her abusive husband; and the only subsequent issue that arose—her DUI conviction—was an isolated incident that had been "remedied." We affirm.

This dependency-neglect case began when the Arkansas Department of Human Services (DHS) took emergency custody of A.A. and appellant's three-and-a-half-year-old

---

[1]The rights of A.A.'s father, Aaron Aguilera, were also terminated, but he is not a party to this appeal.

SLIP OPINION

daughter, I.G.,[2] due to physical abuse of I.G. by appellant's husband, Aaron Aguilera, who was A.A.'s legal father and I.G.'s stepfather. On December 11, 2011, while appellant was at work, Aaron intentionally threw I.G. off of a bed, causing her to hit her head and sustain a five-inch skull fracture. Aaron was arrested and charged with battery. DHS took custody of the children two days later, when it appeared that appellant was wavering and calling the injury an accident. Appellant and her husband had a history of domestic violence that included him breaking appellant's nose, and both had previously been jailed for violating a no-contact order. In fact, a protective-services case was in place and investigations were ongoing when the children were removed on December 13, 2011.

After a hearing on February 1, 2012, the court adjudicated A.A. and I.G. dependent-neglected based on physical abuse by Aaron and neglect (failure to protect) by appellant. The court found that Aaron fractured three-and-a-half year old I.G.'s skull. The court further found that I.G. had bruises on both sides of her jaw, which appellant initially said happened from holding her face while brushing her teeth but later admitted that Aaron had done it when he held I.G.'s face to make her look at him. Around Thanksgiving 2011, Aaron had spanked I.G. so hard that she had black bruises. The court granted appellant supervised visitation and ordered her to, among other things, attend domestic-violence counseling, have a psychological evaluation and follow the recommendations, refrain from using illegal drugs or alcohol, complete parenting classes, and pay $37 a week in child support.

---

[2]The court ultimately awarded permanent custody of I.G. to her father, who lived in California.

Following a May 2012 review hearing, the court found that appellant had followed some of the requirements of the court orders and case plan. Appellant had stable housing and employment, had completed counseling, cooperated with DHS, submitted to random drug screens, completed parenting classes, submitted to hair-follicle testing, and was current on her child support. The court also found, however, that appellant had missed two appointments for her psychological evaluation and was still married to Aaron. The court had "serious concerns" that appellant would not keep the children safe. The court also noted that Aaron had been sentenced to twenty years' imprisonment, with fourteen of those suspended, for fracturing I.G.'s skull. Appellant's child-support obligation was suspended so that she could travel to California to visit I.G., who had been placed in her father's custody.

The court held a permanency-planning hearing on October 10, 2012. At the conclusion of the hearing, the court changed the goal of the case to termination of parental rights and adoption, noting that appellant had stayed with Aaron for two months while this case was open and still spoke to him on the phone when he was in prison, she had recently been charged with DUI, and she had not demonstrated the ability to protect A.A. The court held appellant in contempt of court for not having her psychological evaluation when she was ordered to, sentencing her to thirty days in jail but suspending it on the condition that she follow all future orders.

In the petition for termination of parental rights, DHS alleged that termination of appellant and Aaron's parental rights was in A.A.'s best interest and included the following grounds for termination:

> • That a juvenile has been adjudicated by the court to be dependent–neglected and has continued to be out of the custody of the parent for twelve (12) months and,

despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent;[3]

• That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent;[4]

• The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.[5]

The termination hearing was held on January 28, 2013. DHS caseworker Anastacia Moore testified that A.A. was doing very well in his foster home, which was a permanent placement, and was highly adoptable. She further testified that since the hearing in October, appellant had been calling weekly, had been to counseling, and had maintained stable housing and employment. However, DHS was concerned that, if A.A. were returned to appellant, appellant might not be able to protect him once Aaron was released from serving his one-and-a-half to two-year prison sentence.

Appellant testified that she had lived at her current address for ten months and had worked at the same restaurant for seven or eight months. She testified that she had been receiving counseling and that she finally "got it" that she should not be in an abusive relationship. She stated that she would never go back to Aaron and had filed for divorce on

---

[3] Ark. Code Ann. § 9-27-341(b)(3)(B)(i) (Supp. 2011).

[4] Ark. Code Ann. § 9-27-341(b)(3)(B)(vii).

[5] Ark. Code Ann. § 9-27-341(b)(3)(B)(ii).

SLIP OPINION

November 2. Appellant acknowledged that she had twice before told the court that she was getting a divorce but failed to follow through. Her last contact with Aaron was in October or at the end of September when she communicated with him to let him know how his son was doing. She stated that if she were in his situation she would want to know how her son was doing; she stated that she had not kept Aaron updated since that time and did not think that she should. Appellant testified that she went to court for her DUI charge after the October hearing in this case. She pled guilty and was ordered to pay a $300 fine, attend six hours of alcohol-abuse classes at Ozark Guidance, and go to a one-time Mothers Against Drunk Driving course, all by March 2013. As of the termination hearing, appellant had done none of these.

Aaron Aguilera testified that he had received a twenty-year sentence, with fourteen of those suspended, for first-degree battery of I.G.; the earliest he could get out of prison was November 2013. He testified that he accepted that he and appellant were getting a divorce, and he would not try to contact her when he got out of prison.

DHS, CASA, and the attorney ad litem all recommended terminating parental rights. At the close of the hearing, the court terminated appellant's and Aaron's parental rights to A.A. The court explicitly found appellant not credible, stating that it did not "believe for a minute her testimony today that she's gonna stay away from A.A.'s daddy." This appeal followed.

## I. *Incorporating Prior Testimony*

First, appellant argues that the circuit court erred by incorporating into the record all testimony in this case, as the court indicated by marking a box in the termination order

stating that the court "grants DHS's attorney's motion to incorporate into the record all the pleadings and testimony in this case,"[6] although DHS had not made any such motion. Appellant cites Arkansas Supreme Court Rules 6-9(c)(1) (2012), which provides:

> The record for appeal shall be limited to the transcript of the hearing from which the order on appeal arose, any petitions, pleadings, and orders relevant to the hearing from which the order on appeal arose, all exhibits entered into evidence at that hearing, and all orders entered in the case prior to the order on appeal.

Thus, appellant argues that she was not permitted to include in the record on appeal any of the testimony from prior hearings that may have been considered by the trial court in making the termination decision. She contends that incorporating testimony from prior hearings in a wholesale manner, without her having the opportunity to include that testimony in the record on appeal, places her "in the inequitable position of not being able to receive a review of *all* of the evidence."

For the reasons set forth in *Kelso v. Arkansas Department of Human Services*, 2013 Ark. App. 509, handed down this same day, we reject appellant's argument and affirm on this point.

## II. *Sufficiency of the Evidence*

Next, appellant contends that termination of her parental rights to her son was not supported by the record. Specifically, she challenges the findings that she failed to provide significant material support to her child, that she failed to remedy the issue causing removal,

---

[6]As appellant points out, this part of the court's form termination order appears to be based on a statutory provision that was repealed by Act 587 of 2007. Ark. Code Ann. § 9-27-341(d)(2) previously required the court to take judicial notice and incorporate by reference into the record all pleadings and testimony in the case incurred before the termination-of-parental-rights hearing, if the parent was represented by counsel.



and that subsequent issues arose after the filing of the original petition for dependency-neglect.

This court has set out the standard of review in termination-of-parental-rights cases as follows:

> The rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well being of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A trial court's order terminating parental rights must be based on findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2011); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

*Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 791, at 8–9, 387 S.W.3d 311, 316.

Here, appellant argues that she had benefited from domestic-violence education and that the trial court erred by not allowing her an opportunity to "fix" her initial decision to stay with an abuser. However, the trial court's findings were not clearly erroneous. The issue of whether the condition that caused A.A. to be removed from his mother's custody—her failure to protect her children, despite knowledge of her husband's abusive behavior—was remedied hinges entirely on credibility. The trial court simply did not believe that appellant had changed and would be able to protect A.A. We defer to the trial court on matters of credibility. *Anderson*, *supra*.

Only one ground is necessary to terminate parental rights. Ark. Code Ann. § 9-27-341(b)(3)(B). Nonetheless, the trial court did not err in finding that appellant's DUI

conviction was a subsequent issue that demonstrates that placement of the juvenile in appellant's custody was contrary to the juvenile's health, safety, or welfare. Despite appellant's attempts to minimize the DUI, it is significant that, while under a court order to refrain from using alcohol, appellant had recently incurred a criminal conviction for DUI and had not taken steps to fulfill her obligations under her plea agreement.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.