Cite as 2024 Ark. App. 192

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-23-692

| | |
|---|---|
| CLAYTON CARTER AND SUSAN PRICE | Opinion Delivered March 13, 2024 |
| APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-22-6] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE DIANNA HEWITT LADD, JUDGE |
| APPELLEES | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellants Susan Price and Clayton Carter separately appeal from the Sebastian County Circuit Court's order terminating their parental rights to their child, MC. Price's counsel has filed a motion to withdraw that is accompanied by a no-merit brief filed pursuant to Arkansas Supreme Court Rule 6-9 and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). Carter challenges the circuit court's three findings of statutory grounds for termination: (1) twelve-month failure to remedy, (2) subsequent factors, and (3) aggravated circumstances, as well as the circuit court's best-interest finding. We affirm the circuit court's termination order as to both appellants and grant the motion to withdraw filed by Price's counsel.

The Arkansas Department of Human Services (the department) first responded to an allegation of inadequate supervision on December 15. 2021, at approximately 7:45 a.m. when eighteen-month-old MC, wearing only a diaper, was seen roaming around in the parking lot of a dentist office on a busy intersection during school hours. The Greenwood Police Department located Price "dead asleep" inside her residence in a back bedroom after repeatedly knocking and getting no answer. She admitted she had smoked marijuana prior to going to sleep and was arrested and charged with third-degree endangering the welfare of a minor. A safety plan was put in place at that time, and MC was left in Carter's care.

On January 5, 2022, Carter was arrested for third-degree domestic battery of Price and first-degree purposely interfering with emergency communications. Price was charged with second-degree assault on family or household member and third-degree endangering the welfare of a minor. These charges stemmed from an altercation that took place in the presence of MC. The department took emergency custody of MC on that date. On January 10, 2022, the department filed a petition for emergency custody. On the same date, the circuit court entered an ex parte order placing custody of MC with the department.

A probable-cause hearing was held on January 11, 2022. Carter remained in jail and was not present. Price stipulated to probable cause, and the trial court found that probable cause existed at the time of the removal and continued to exist. The trial court admitted into evidence MC's birth certificate along with the acknowledgment of paternity signed by Carter. The court found that MC shall remain in the custody of the department because the parents are unfit, and the juvenile's health and safety cannot be protected by the parents

if returned to the parents.  The court also found that the return of custody to the parents was contrary to the welfare of the juvenile, and it was in the best interest of MC to continue custody with the department and was necessary for the protection of MC's health and safety and the least restrictive alternative.  The case plan goal is for reunification.

An adjudication hearing was held on March 1, 2022.   The trial court adjudicated MC dependent-neglected on the basis of stipulations of parental unfitness.  The trial court found that the safety concerns preventing return of custody or otherwise placement with a parent to be the parents' fighting and throwing things, Price's admitted drug usage, and the emergency that precipitated the no-contact order between the parents.  A case plan was approved that required Price and Carter to complete parenting classes, individual counseling, domestic-violence classes, drug-and-alcohol assessments, drug treatment and counseling, drug screening, visitation, and reliable transportation.

At the review hearing on August 9, 2022, the court found the parents had not complied with the case plan and the court's orders.  Specifically, the parents had no reliable transportation and had not been consistent with visitations during this review period.  The court stated that visitations would be critically important for next hearing and found that the parents had not started parenting classes, domestic-violence classes, or completed the drug-and-alcohol assessments; had not demonstrated progress toward the goals of the case plan; had not benefited from their failure to complete the goals of the case plan; the mother was unemployed, and she had been positive on all but one drug screen; and the father was doing fairly well in that he had passed all but one drug screen.  The circuit court continued

the goal of the case as reunification but found the concurrent goal of the case shall be adoption following termination of parental rights.

On January 3, 2023, the court held a permanency-planning hearing. The court found neither Price nor Carter had complied with the case plan and goals of the case. Neither party has started parenting classes, domestic-violence classes, drug-and-alcohol assessments, or counseling. They had let the department referrals expire, and new referrals had to be made. Neither Carter nor Price has reliable transportation. The parents had failed to make significant, measurable progress. Price had been drug screened during this review period, and on November 9, 2022, she tested positive for amphetamines, methamphetamine, and THC. The circuit court found that MC shall remain in the custody of the department because the parents are unfit, and the juvenile's health and safety could not be protected by the parents if returned to the parents; that return to the custody of the parents was contrary to the welfare of the juvenile; and the continuation of custody in the department was in the best interest of the juvenile and necessary for the protection of the juvenile's health and safety and the least restrictive alternative. The goal was changed to termination of parental rights and adoption.

In response to the change in goal, the department filed a petition for termination of parental rights alleging the following grounds: (1) twelve-month failure to remedy (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*)) (Supp. 2021); (2) subsequent factors (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*)); and (3) aggravated circumstances—little likelihood of successful reunification despite a reasonable offer of services. (Ark. Code Ann. § 9-27-

4

341(b)(3)(B)(ix)(*a*)(*3*)(*A*)).  The petition also alleged that termination was in the child's best interest.

A termination-of-parental-rights hearing was held on April 13, 2023.  The court found all three statutory grounds pled by the department as grounds for the termination of Price's and Carter's parental rights, as well as the best-interest finding, by clear and convincing evidence.

The right of a natural parent to the custody of his or her child is "one of the highest of natural rights." *Mayberry v. Flowers*, 347 Ark. 476, 484, 65 S.W.3d 418, 424 (2002) (quoting *Olney v. Gordon*, 240 Ark. 807, 811, 402 S.W.2d 651, 653 (1966); *Woodson v. Lee*, 221 Ark. 517, 521, 254 S.W.2d 326, 329 (1953)).  Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Johnson v. Ark. Dep't of Hum. Servs.*, 78 Ark. App. 112, 119, 82 S.W.3d 183, 187 (2002).  However, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor child. *J.T. v. Ark. Dep't of Hum. Servs.*, 329 Ark. 243, 248, 947 S.W.3d 761, 763 (1997).  We review termination-of-parental-rights cases de novo. *Grant v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 636, 378 S.W.3d 227.  The grounds for termination of parental rights must be proved by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses.  *Id.*  A finding is clearly erroneous when,

although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

## I. *The Mother*

Price filed a timely notice of appeal, and her appointed counsel petitioned this court to be relieved as counsel, stating she could find no meritorious grounds for appeal. *Linker-Flores*, 359 Ark. 131, 194 S.W.3d 739. We have held that appointed counsel for an indigent parent on a first appeal from an order terminating parental rights may petition this court to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. The counsel's petition must be accompanied by a brief that discusses any arguably meritorious issue for appeal. The indigent parent must be provided with a copy of the brief and notified of the parent's right to file points for reversal within thirty days. If this court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal. Price was notified of her right to file additional points on appeal but did not submit additional points.

Price's counsel asserts there would be no merit to a challenge to the sufficiency of the evidence to support the termination. We agree. The court found that there was clear and convincing evidence that all three statutory grounds pled by the department were proved by clear and convincing evidence. A parent's failure to comply with the case plan and court orders may be considered a subsequent factor. *See Farfan v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 438, 654 S.W.3d 849 (citing *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915). Here, Price never successfully completed drug treatment and

continued to test positive for illegal substances throughout the case and did not complete any services that were offered, including domestic-violence counseling. There is no meritorious defense to Price's failure to comply with the case plan that undersigned counsel has identified. Her lack of urgency supports a finding of indifference to remedying subsequent factors, despite appropriate family services being offered. *Ewasiuk v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 59, 540 S.W.3d 318. Simply, there was nothing else the court or the department could do for Price. Because only one ground is needed for termination, any argument regarding the remaining grounds is moot. *See Draper v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58.

That leaves the trial court's "best interest" findings for a possible challenge. The Juvenile Code requires that a best-interest finding be based on a consideration of at least two factors: (1) the likelihood of adoptability (which is concerned with whether adoption is a viable permanency plan for the juvenile) and (2) the potential harm caused by "continuing contact with the parent. . . ." Ark. Code Ann. § 9-27-341(b)(3)(A). Potential harm must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722; *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Each factor does not have to be proved by clear and convincing evidence; rather, it is the overall evidence that must demonstrate clearly and convincingly that termination is in the child's best interest. *McFarland v. Ark. Dep't of Hum. Servs.*, 91 Ark. App. 323, 201 S.W.3d 143 (2005). Here, the department provided testimony through Mellisa Kaupp that there are no barriers to MC's adoptability. She is two and a half

7

years old with no significant medical or behavior issues. There were 383 families that match, with at least one family that is currently interested in adoption of MC. MC has no disabilities or behavioral issues that would hinder adoption. The proposed permanency goal for MC is adoption. This court has held such evidence to be sufficient evidence to support this element of the best-interest analysis. *Brabon v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 2, 388 S.W.3d 69; *Reed v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 416, 375 S.W.3d 709; *Cobbs v. Ark. Dep't of Hum. Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004). Thus, there is no meritorious challenge to this best-interest factor.

As to the "potential harm" prong, Price demonstrated that she was either unable or unwilling to put herself in a position to take custody of her child. Because Price continued to use drugs and because she refused to comply with drug-treatment services, there was sufficient evidence to find that the child would be at risk of harm in Price's custody. *See Stewart v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 344, 669 S.W.3d 654 (citing *Johnson v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 313, at 11, 603 S.W.3d 630, 636) (holding evidence of a parent's continued drug use or failure to comply with court orders constitutes sufficient evidence of potential harm).

In accordance with Ark. Sup. Ct. R. 6-9(i)(1)(A), appellate counsel reviewed the record for all rulings adverse to Price made by the trial court on all objections, motions, and requests made by Price at the hearing from which the appeal arose. Counsel was obligated to point out any adverse ruling to her client to comply with the rules for a no-merit brief. During the hearing, Kaupp testified that the child was not bonded to Price, on the basis of her

8

observations. Price argued Kaupp could not have formed that opinion since she had been at the visitation for only two seconds. The ad litem objected to this statement as speculation, and the court sustained the objection. Even if the court's ruling could be considered an error, it was a harmless error. This court has stated that it will not reverse a trial court's ruling on the admissibility of evidence absent a manifest abuse of discretion and a showing of resulting prejudice. *Rauls v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 366, 576 S.W.3d 59. Price would not be able to demonstrate prejudice from the fact that the ad litem's objection was sustained, and we will not reverse without a showing of prejudice, as prejudice is not presumed. *Lynch v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 149. We agree with counsel that this ruling did not constitute reversible error since there was no abuse of discretion. The trial court terminated Price's parental rights due to the ongoing drug use and instability, not due to the lack of a bond between MC and Price. We hold that Price's counsel has complied with the requirements for a no-merit termination-of-parental-rights appeal and that the appeal is wholly without merit. We therefore affirm the termination of Price's parental rights and grant counsel's motion to be relieved.

## II. *The Father*

Carter challenges each of the statutory grounds found by the court to terminate his parental rights and argues the termination of parental rights was not in the best interest of MC. Because only one ground is necessary to support termination, we will address only the subsequent-factors ground found by the trial court. *Burks v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 94, 660 S.W.3d 918. Carter filed his timely appeal of this decision.

9

The subsequent-factors ground, codified at Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*), provides that termination is appropriate when other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parents.

Pursuant to an approved case plan, Carter was required to complete parenting classes, individual counseling, domestic-violence classes, drug-and-alcohol assessments, drug treatment and counseling, and drug screening; participate in visitation; and obtain reliable transportation. His lack of urgency supports a finding of indifference to remedying subsequent factors despite the offer of appropriate family services. *Ewasiuk*, 2018 Ark. App. 59, 540 S.W.3d 318. Carter admitted that the court's finding that he had minimal compliance with the case plan was correct because he had not utilized the services until after the permanency-planning hearing. Arkansas Code Annotated section 9-27-341(a)(4)(A) expressly provides that a parent's overtures toward complying with the case plan and trial court orders that occur only after the permanency-planning hearing are insufficient to defeat the termination of parental rights. *Arnold v. Ark. Dep't Hum. Servs.*, 2019 Ark. App. 300, 578 S.W.3d 329.

In addition to his failure to utilize services, Carter tested positive for amphetamines, methamphetamine, and THC throughout the case, including the test immediately prior to the termination-of-parental-rights hearing where he tested positive for methamphetamine and THC. We have held that a parent's lack of compliance with the case plan and court orders, including testing positive for drugs, supports termination of parental rights under the "subsequent factors" ground. *Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, 529 S.W.3d 684. Although Carter testified that he made some efforts to rehabilitate himself after the permanency-planning hearing, his eleventh-hour improvements need not be credited by the trial court and will not be held to outweigh evidence of prior noncompliance. *Henderson v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 191, 377 S.W.3d 362; *Krass v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 245, 306 S.W.3d 14. The evidence showed that the department *offered* appropriate services, which is all that the statute requires. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii).

In making a best-interest determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential harm to the child if custody is returned to a parent. *Miller v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113. On appeal, Carter does not challenge the adoptability finding, except to argue that the bond with MC is strong and was not considered. The strong bond that Carter alleges is not shown by the evidence. Carter exercised less than half of his scheduled visitations with MC. This court has held, however, that termination of parental rights will not be reversed on the basis of a parent's bond with the child. *Swanson v. Ark. Dep't of Hum.*

*Servs.*, 2023 Ark. App. 355; *Holdcraft v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 151, 573 S.W.3d 555. In *Hickman v. Arkansas Department of Human Services*, 2021 Ark. App. 457, 636 S.W.3d 815, we rejected a similar "parent-child bond" argument when the evidence showed that the mother was still testing positive for illegal substances and had failed to follow the case plan or orders of the trial court. Here, Carter was still testing positive for illegal substances, failed to take domestic-violence classes, had not completed drug counseling, and failed to follow the case plan. *Sturgeon v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 337, at 18, 669 S.W.3d 921, 931. Thus, there is no meritorious challenge to this best-interest factor.

Next, Carter challenges the potential-harm prong of the best-interest analysis. Carter argues on appeal that the evidence was wholly insufficient to support the court's findings on potential harm. Potential harm, however, is not an element of the cause of action and does not need to be established by clear and convincing evidence; rather, after considering both adoptability and potential harm, the circuit court must find by clear and convincing evidence that termination of parental rights is in the child's best interest. *Benson v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 65, 636 S.W.3d 342. A potential-harm analysis must be conducted in broad terms, with the trial court considering the harm to the child's health and safety that might occur from continued contact with the parent. *Barnes v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 525. Carter alleges there was no showing that actual harm to the child was proved. There is no requirement to find that actual harm would result or to identify the potential harm. *Id.* It is well settled that a parent's past actions over a meaningful period of time are good indicators of what the future may hold. *Easter v. Ark. Dep't Hum. Servs*, 2019 Ark. App.

441, 587 S.W.3d 604. As to potential harm, the court found that MC would be subjected to potential harm if parental rights were not terminated—specifically, potential psychological and physical harm to MC due to the lack of stability and drug usage. This court has consistently noted that continuing drug use demonstrates potential harm to children. *Jackson v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Id.* Carter did not show he could provide a safe and stable home because he would not allow the department to visit his home to verify the conditions of the home and suitability for a child. *Jurls v. Ark. Dep't Hum. Servs.*, 2023 Ark. App. 443, 676 S.W.3d 316. Carter completely ignored the case plan that ordered him to attend domestic-violence classes even though domestic-violence arrests were the reason, at least in part, that this case was initiated. *Robinson v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 64, ___ S.W.3d ___. Physical violence in Carter's home and his failure to seek counseling is a serious concern for the physical and psychological well-being of a child.

The same facts that support the subsequent-factors ground support the potential-harm determination. The question this court must answer is whether, in our de novo review of the record, the trial court's potential-harm finding was clearly erroneous. Given the fifteen-month history of this case, Carter's noncompliance throughout, his lackadaisical approach to visits with MC, and his only recent attempts at sobriety, we cannot say the court's finding was clearly erroneous.

Affirmed.

GLADWIN and GRUBER, JJ., agree.

*James & Streit*, by: *Jonathan R. Streit*, for separate appellant Clayton Carter.

*Dusti Standridge*, for separate appellant Susan Price.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.