Cite as 2025 Ark. App. 74

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-24-387

|  |  |
|---|---|
| KERI WILLINGHAM AND WENDELL STEELE | Opinion Delivered February 12, 2025 |
| APPELLANTS | APPEAL FROM THE SHARP COUNTY CIRCUIT COURT [NO. 68JV-22-3] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE ADAM G. WEEKS, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**BART F. VIRDEN, Judge**

Keri Willingham's and Wendell Steele's parental rights were terminated by order of the Sharp County Circuit Court on June 17, 2024. Keri's attorney seeks to be relieved as counsel and has filed a no merit-appeal pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2022). Wendell has filed a merit appeal contesting the potential-harm prong of the circuit court's best-interest finding. We affirm both terminations and grant counsel's motion to withdraw.

I. *Relevant Facts*

On January 4, 2022, the Arkansas Department of Human Services (Department) filed a petition for emergency custody and dependency-neglect regarding MC1 (born November

2019) and MC2 (born May 2021). At this time, Wendell was identified as the children's putative father.[1] In the affidavit attached to the petition, the Department alleged that a Garrett's Law case was opened for the family in May 2021. The family left the area and refused to work with the Department, but in January 2022, pursuant to a hotline call, the children were picked up from their aunt's house. Wendell was with them, and he explained that Keri had left the children with him a few days earlier after having disappeared with them for several months. Wendell stated that he and Keri had been using drugs when the case was opened, and they did not want the Department to take the children. Wendell explained that he had quit using methamphetamine, but he still used marijuana. In the petition, the Department alleged that the health and physical well-being of the children were endangered by the parents' refusal to allow the Department to have access to them, failure to adequately supervise the children, and inability or unwillingness to meet the children's needs for food, clothing, shelter, and access to medical care.

The court entered an ex parte order for emergency custody and a subsequent probable-cause order finding that emergency conditions existed such that removal was necessary and in the children's best interest. The parents were ordered to cooperate with the Department, watch "The Clock is Ticking," abstain from drug use and submit to drug testing, submit to drug-and-alcohol assessment and psychological evaluation, follow the

---

[1]At the time of removal, Keri was still married to Larry Willingham, and he was identified as the children's legal father. Eventually, Willingham relinquished any parental rights he may have had, and Wendell produced birth certificates naming him as the father; thus, Wendell was declared the legal and biological father of MC1 and MC2.

recommendations pursuant to the assessment, complete parenting classes, obtain stable employment and safe and stable housing, and resolve all criminal issues.

The court entered the adjudication order on March 8, finding MC1 and MC2 dependent-neglected due to parental unfitness and drug use. In addition to the orders discussed above, the parents were ordered to provide proof of their prescriptions and attend AA/NA meetings. The goal of the case was reunification.

In the May 10 review order, the court found that the Department had provided services and referrals for services to the parents, but the children could not be returned to their parents at that time. Keri was found to be noncompliant with the case plan. She had not obtained stable housing or employment, completed parenting classes, exercised visitation, or attended drug-and-alcohol assessment. Wendell had completed parenting classes but did not consistently visit the children, and he had not obtained stable housing or employment or completed a drug-and-alcohol assessment.

In the September 6 review order, the court found that the children must remain in Department custody because returning them to parental custody was contrary to their health, safety, and welfare. The court found the Department had made reasonable efforts to provide services for the family, and Keri and Wendell were noncompliant with the case plan. Specifically, Keri had not obtained stable housing, employment, or transportation and had not completed parenting classes. Keri completed her drug-and-alcohol assessment, but she was inconsistent with treatment and failed drug screens for marijuana, amphetamines and methamphetamine. She and Wendell had visited the children only once in three months.

Wendell had not obtained stable housing, employment, or transportation or completed his drug-and-alcohol assessment. Wendell had failed drug screens for marijuana, amphetamines, and methamphetamine.

In the February 21, 2023 permanency-planning order, the circuit court changed the goal of the case to termination and adoption. The court found that Keri had obtained a job but immediately quit, and she had started inpatient substance-abuse treatment but left within a few weeks. Keri had failed random drug screens for marijuana, and she did not have stable housing. Wendell was found to be partially complaint with the case plan. He had found a job, then he lost it and obtained other employment. He also started inpatient treatment but left within a few weeks and had continued to fail drugs screens for marijuana. He had not obtained stable housing.

The Department filed a petition for the termination of Keri's and Wendell's parental rights. The Department asserted that there was potential harm to MC1 and MC2 if they were returned to their parents. Specifically, the children would be at risk of homelessness, parental drug use, abandonment, and inadequate food and clothing. The Department alleged that the children had been out of the parents' home for twelve months, and despite appropriate services, neither parent had remedied the causes of removal. The Department asserted that both parents had willfully failed to provide significant material support or maintain meaningful contact with the children. The Department alleged that issues had arisen subsequent to the filing of the original dependency-neglect petition, and despite the

4

offer of services, the parents had manifested an inability or unwillingness to remedy the subsequent issues.

A hearing was held on December 5. Family service worker Berkley Chafin testified that Keri had missed several visitation appointments because of illness and surgery, and other times she just did not show up. In September and October, she failed to call or attend visits several times. Chafin stated that it upset the children when Keri did not attend visitation, and eventually, the Department decided that the children would not be transported to visitation until Keri had arrived. The Department had also canceled visitation, but only when the children were sick, and the Department had offered to reschedule those visits. Keri behaved appropriately with the children at visitation, and she and the children were very bonded and affectionate with each other. The Department had offered transportation, but Keri refused, saying that she had a ride. Wendell attended two visits that summer. Wendell had not found a stable home or employment and had not asked for any help from the Department regarding transportation or mental-health services.

Courtney Dodd, the children's foster mother, testified that MC1 and MC2 had been with her and her husband for two years, which was half of MC1's life and most of MC2's life. She stated that after visits, the children had difficulty transitioning back to the classroom and home and did not sleep well for a couple of nights afterward. Dodd described the transition back to their schedule as "rough." Courtney stated that they want to adopt MC1 and MC2.

Miranda Swiatkowski, the family service worker for the case since May, testified that Keri had been living with her friend Mattie off and on, but she was not on the lease to the home, and she had not prepared a room for the children to live in if they were placed with her. The room Keri suggested for the children was cluttered, "packed full" without space for the children, and contained a crib that neither child would use. Three dogs and three or four cats lived in the house, which Keri did not think was excessive. Keri briefly had been employed in September at a gas station, but she quit that job. Keri had tested positive for amphetamines and methamphetamine since May. Outpatient drug treatment had been recommended pursuant to Keri's drug-and-alcohol assessment, and she had begun and quit treatment twice. Keri stopped attending drug counseling but still attended Celebrate Recovery on Sundays. She had been offered transportation to these services and visitation but had refused help.

Keri testified that she did not bring photos of her home because she did not have "any hope of getting my children back, even though I've done things that I've been asked." She explained that she had set up the room for her children but "ended up taking them down because it's – it's sad, it's depressing." Keri testified that she tested positive for methamphetamine in the last round of testing, and she had not completed drug-related services. She admitted using meth three times since August as an escape from her situation. Keri stated that she thought she had been diagnosed with borderline personality disorder, but she did not take medication for it, and she did not like doctors. Keri believed that MC1 and MC2 had not been unsafe or neglected when she was using methamphetamine but

admitted it was not the best parenting situation. Keri blamed her lack of success regarding sobriety on her lack of noticeable progress in the case plan, explaining that if she had been given more privileges with her children, she would have kept up with the case plan and services. Keri considered being a roommate in her friend's home stable housing. Keri testified that she had to quit working at the gas station because it forced her to be around drug users. At the time of the hearing, she cleaned homes for money, but she had not been able to obtain a job since her ankle surgery because she had not been medically cleared. Keri acknowledged that she regularly missed appointments and had trouble keeping track of time and the days; however, she believed she could do better for her children than she could for herself. Keri had never had a driver's license and had to pay fines before she could obtain a license; however, she walked everywhere and refused the Department's offer of transportation services because she was afraid it would be held against her. Keri explained that she stopped working the program and services because she felt defeated and that she would never get her kids back.

Wendell testified that he was currently in the Pocahontas jail on possession-of-drug-paraphernalia charges, but he explained that he had a home in which his father was currently residing. He testified he had been sober over a year and a half and did not smoke cigarettes anymore. Wendell stated that he tested positive for drugs because he vaped before he was incarcerated, and he did not realize there was THC or CBD in the vape pen. After that, working the case plan became more difficult. Wendell also left drug treatment after twenty-eight days into a six-month program because the program did not assist in visitation as

promised, and he needed to work to provide for his children. Wendell testified that he had repaired Keri's friend Mattie's house so the children could live there, but then he and Keri broke up, and she moved out of Mattie's house for a couple of months. Wendell asserted that he needed more time so that he could be released from jail and get back to work. He stated that before he was incarcerated he was working fifty to sixty hours a week repairing homes.

On March 27, 2024, the circuit court entered an order terminating Keri's and Wendell's parental rights. The circuit court found that MC1 and MC2 had been out of the custody of the parents for a period "far exceeding twelve months," and the parents had not remedied the causes for removal despite meaningful efforts by the Department to provide services. Neither parent complied with the case plan, and Wendell was currently incarcerated. Both parents were mentally unstable, and the children could not return on the day of the hearing or likely ever. Regarding best interest, the court found that Dodd's testimony was credible and relevant. Specifically, the court noted that Dodd testified that the children exhibited disruptive behavior and had trouble sleeping after visitation. The court noted that it relied on Swiatkowski's testimony that Keri had been provided support, mental-health services, drug counseling, transportation, family time, and housing assistance, and both Keri and Wendell were provided extensive family-treatment services. Wendell had not communicated with the Department and was not compliant with the case plan. The court found that Wendell's testimony that he had made every effort to achieve sobriety, participate in family time, and earn a living repairing homes was not credible. The court

8

found that Keri's refusal to use the transportation service provided by the Department was a big part of her problem. It caused her to miss visits, not find employment, and fail to complete services. The court found that Keri was focused on holding others responsible for her lack of progress, and she had not ascertained what she needed to do to work the case plan. The court found Keri's testimony that she was drug-free not credible. The court found that Keri did not have a stable home or even a room prepared for her children and had not dealt with the numerous animals in the home. The court believed Keri's testimony that she had given up trying to reunify with the children and determined that there were no further services that could be offered to achieve reunification. The court found that the children are adoptable, noting that the foster parents want to adopt them, and that the children would be subjected to potential harm if returned to their parents in light of the above findings. Keri and Wendell timely filed their notices of appeal, and these appeals followed.

## II. *Keri's No-Merit Appeal*

### A. Statutory Grounds and Best-Interest Finding

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The brief must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the brief's

9

statement of the case and facts must contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, *supra*.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Proof of only one ground is necessary to terminate parental rights. *Id.*

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B); *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be

10

adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

In her brief, counsel asserts that after a conscientious review of the record, she has determined that there are no issues of arguable merit for appeal. Counsel identifies the circuit court's subsequent-other-factors finding as the strongest statutory ground for termination. She adequately explains why the evidence is sufficient to support the ground. Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) provides that the circuit court may terminate parental rights when

> other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Regarding the circuit court's best-interest finding, counsel explains that the court had sufficient evidence to find that MC1 and MC2 faced potential harm if returned to Keri's care. In addition to her drug use, Keri had not obtained a safe, stable place for the children to live or shown that she could provide for their basic needs. Regarding adoptability, the foster mother stated she and her husband wish to adopt both children. Counsel contends that there can be no meritorious challenge to the circuit court's best-interest finding and concludes that the facts supporting potential harm, in conjunction with the evidence of the

11

children's adoptability, provided sufficient evidence for the circuit court to find that termination of Keri's parental rights was in the children's best interest. We agree.

## B. Adverse Rulings

We now turn to the rulings adverse to Keri during the termination hearing. Counsel adequately explains why none of the adverse rulings present meritorious grounds for reversal.

### 1. *Objection to adoption testimony as speculative*

The ad litem asked the foster mother if there was any chance that adoption would not occur if the children became available for adoption, and Keri's counsel objected because it called for speculation. The court overruled the objection, allowing the testimony as evidence of the likelihood of adoption and the foster parents' plan to adopt. Counsel adequately explains that the expression of a currently held belief does not amount to speculation, citing *Stampley v. Arkansas Department of Human Services*, 2017 Ark. App. 628, at 7, 533 S.W.3d 669, 673. In *Stampley*, parent counsel objected when the mother was asked whether she believed the Department was corrupt in some way, arguing that the question called for speculation. The court overruled the objection, finding that expressing a currently held belief did not amount to speculation, and we affirmed the circuit court's decision; thus, similarly, this adverse ruling presents no meritorious ground for reversal.

### 2. *Hearsay objection*

During Swiatkowski's testimony, the ad litem asked if any reports showed whether Keri had attended counseling. Parent counsel objected, arguing that the question would elicit a hearsay response. The court stated, "Not yet, so overruled." The ad litem rephrased

the question, asking if Swiatkowski had received any reports regarding Keri's attendance, to which she answered yes. The ad litem next asked Swiatkowski what she had learned about attendance for Keri and her mental health counseling, which was deemed hearsay by the court, and the objection was sustained. Counsel correctly asserts that the court sided with Keri, and the objection cannot be considered a ground for reversal.

3. *Hearsay objection and lack-of-foundation objection*

The following colloquy took place during Swiatkowski's testimony:

| | |
|---|---|
| ATTORNEY AD LITEM: | She has not reported back about drug ~ and kind of drug or alcohol counseling or session; is that right? |
| MIRANDA SWIATKOWSKI: | Partially. |
| ATTORNEY AD LITEM: | She has given you some feedback? |
| MIRANDA SWIATKOWSKI: | Yes. She's no longer attending the counseling therapy part of it but she does still attend the celebrate recovery part of it. |
| KERI'S COUNSEL: | Your Honor, I'm going to object to lack of foundation and hearsay. |
| THE COURT: | Well, it's not hearsay, so it's overruled. You may proceed. |

The circuit court did not rule on the foundation objection; thus, counsel correctly asserts that the issue is not preserved for review and that there is no meritorious ground for reversal. Moreover, regarding hearsay, counsel notes that the court was correct that the testimony was not hearsay. A statement is not hearsay if it is offered against a party and is his

13

or her own statement. *See* Ark. R. Evid. 801(d)(2) The testimony above involved Keri's own statement; therefore, this objection does not present a meritorious ground for reversal.

4. *Argumentative objection*

During Swiatkowski's testimony, Keri's counsel objected to the ad litem's questioning as argumentative when she asked, "So that test today, you made a big deal about it, but really she doesn't—." The court sustained the objection, and counsel clarified her question, asking, "You're not trying to hold that against her today, are you?" Swiatkowski replied that she was not. Counsel adequately explains that pursuant to Ark. R. Evid. 611(a), the court has broad discretion to exercise reasonable control over the mode of witness interrogation, and this adverse ruling presents no meritorious ground for reversal.

5. *Motion to dismiss*

Parent counsel moved to dismiss the statutory grounds for termination, and the court agreed that one ground—failure to support—would be dismissed. The statutory ground for termination was adequately covered by counsel, and as we discussed above, there is no meritorious ground for reversal regarding the statutory grounds.

Having reviewed the record and counsel's brief, we grant counsel's motion to withdraw and affirm the termination of Keri's parental rights.

III. *Wendell's Merit Appeal*

As stated above, to terminate parental rights, a court must find sufficient proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). Here, the court terminated Wendell's parental rights, relying on two statutory grounds: twelve

14

months failure to remedy and subsequent other factors. Wendell challenges the failure-to-remedy statutory ground for the termination of his parental rights; however, he does not challenge the subsequent-other-factors ground. Because there is an independent, alternative basis for termination, this court must affirm on that ground. *Phillips v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 565, at 10, 567 S.W.3d 502, 508 ("When an appellant fails to attack the circuit court's independent, alternative basis for its ruling, we will not reverse.").

Moreover, the court did not clearly err in finding that sufficient evidence supports the subsequent-other-factors ground for termination of Wendell's parental rights. As stated above, Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)* provides that the circuit court may terminate parental rights if

> other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Since the filing of the original petition, Wendell had been arrested for possession of drug paraphernalia and was incarcerated at the time of termination. Throughout the case, the court found that the Department had made reasonable effort and even "bent over backwards" to provide meaningful services to the family, and yet he had failed to comply with the case plan, failed to obtain stable housing or employment, and could not take the children home on the day of the hearing.

Wendell's challenge to the sufficiency of the evidence seeks to have this court reweigh the evidence. *See Glover v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 278, 577 S.W.3d 13. Wendell argues that if given more time, he could provide a safe, stable home for MC1 and MC2. His argument fails. A child's need for permanency and stability may override a parent's request for additional time to improve his or her circumstances. *Parks v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 488, at 10, 699 S.W.3d 408, 415. Accordingly, we affirm the circuit court's decision to terminate Wendell's parental rights.

Affirmed; motion to withdraw granted.

KLAPPENBACH, C.J., and HARRISON, J., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for separate appellant Keri Willingham.

*Terry Goodwin Jones*, for separate appellant Wendell Steele.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.