Cite as 2025 Ark. App. 511

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-25-233

| | |
|---|---|
| BRIANNA JONES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered October 29, 2025<br><br>APPEAL FROM THE NEVADA COUNTY CIRCUIT COURT<br>[NO. 50JV-24-34]<br><br>HONORABLE DUNCAN CULPEPPER, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

**CASEY R. TUCKER, Judge**

Brianna Jones appeals the Nevada County Circuit Court's termination of her parental rights to her minor child (MC). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2024), Brianna's attorney filed a no-merit brief and a motion to be relieved as counsel. The clerk of our court sent copies of the brief and motion to Brianna informing her of her right to file pro se points for reversal pursuant to Rule 6-9(j)(3), and she has not done so. Having examined the record, we are satisfied that there are no issues of arguable merit to support an appeal. We therefore affirm the termination and grant counsel's motion to be relieved.

The Arkansas Department of Human Services (the Department) filed a petition for dependency-neglect against the parents of MC, Domonique Salinas and Brianna Jones, on

August 27, 2024.[1] The attached affidavit contained the basis for the petition, and at the adjudication hearing, Brianna and Domonique stipulated to the facts set forth therein, which follow.

Brianna and Domonique were not married. Brianna had legal and physical custody of MC, who was four years old on August 24, 2024,[2] when the Nevada County Sheriff's Office found her infant sister, approximately six weeks old, deceased in the home. The sheriff's office notified Department Supervisor Jennifer Rodriguez of the Nevada County Division of Children and Family Services.

Rodriguez arrived at the home to find that the deceased infant's body was in an ambulance. She had bruising and dried blood on her face and bruising on her head. One of her shoulders was swollen, bruised, and possibly dislocated. Rodriguez entered the home to find the living room in disarray. Law enforcement, the county coroner, and Brianna were in the living room. Brianna said she had found her deceased baby in her bassinet and that this was the second time this had happened.[3] Rodriguez walked through the house, finding trash scattered on the floor throughout. Soiled adult diapers were hanging out of trash cans in MC's room; soiled urine pads were on the floors and hanging out of overfilled trash cans. Cat food was strewn throughout the home, and multiple cats roamed the house. Batteries,

---

[1] Domonique Salinas voluntarily relinquished his parental rights to MC before the termination hearing.

[2] MC was born November 11, 2019.

[3] Brianna gave birth to a baby in 2016 who died when she was nine days old.

cigarette lighters, and aerosol spray cans lay about within MC's reach. The floor of the house was covered in cigarette butts, and ashes were covering the floors, cabinets, and furniture. Containers on the stove also contained cigarette butts and ashes. A bleach bottle sat beside a toilet. Bags of trash were on the floor throughout the house. A small ladder lay on a pile of clothes on the floor along with a two-wheel dolly. Prescription bottles containing pills were on top of the refrigerator, and some of the pills were lying outside the bottles. The prescriptions were in the name of one the daughters to whom Brianna's parental rights had been terminated in 2018.

While Rodriguez was en route to Brianna's house, she met up with Domonique, who was also driving and had MC with him. (At that time, MC spent weekends with Domonique.) Rodriguez spoke to Domonique and kept MC with her while Domonique spoke with Brianna. Rodriguez told Domonique that, to keep MC safe, she would prepare a less-than-custody order for MC to remain in his care at the home where he lived with his parents. Domonique agreed. Rodriguez also spoke with Domonique's mother, explaining the importance of ensuring MC's safety.

On August 25, the sheriff's office notified Rodriguez that it had received reports that Brianna and an unidentified man were "half naked" and highly intoxicated at Brianna's residence and had a four-year-old child in their care. When the sheriff's office investigated, they found Brianna and Domonique—who were, in fact, "half naked" and highly intoxicated—with MC1 in their care. The officers arrested Domonique for violating an order of protection that prohibited him from having contact with Brianna.

3

When Rodriguez arrived, a neighbor intercepted her, telling her that something was not right. The neighbor became emotional and stated that when she went inside, she found Brianna to be happy, which bothered her. She said that she thought Brianna's baby had died because Brianna left her in a swing, and the baby had fallen out of the swing and landed on the floor.

Brianna met Rodriguez at the door to the house, hugged her, and stated that her baby was gone. Brianna smelled strongly of alcohol. Rodriguez saw massive clutter throughout the living room, with dirt covering the floors and cigarette butts and ashes on everything. Over twenty empty beer cans and bottles were on counters, floors, and furniture. Hard-liquor bottles were on the table and counter. Brianna was "hyped up" and speaking rapidly; she stated, "I know I fucked up," and "I feel like it's my fault, like something is wrong with me." When Rodriguez asked Brianna what happened to her baby, Brianna said that she did not know, that she got up, and that her baby would not breathe. When Rodriguez asked her where the blood came from, Brianna said she thought it was "stringing from" the baby's nose, but she was not sure because she was "freaking out." Rodriguez asked why Domonique's pants were on the floor, to which Brianna answered that she did not know why he stripped down to his boxers and that he might have been arrested wearing only his boxers. Brianna denied consuming anything besides alcohol. According to Brianna, Domonique's father had dropped Domonique and MC off at her house the day before, and they had spent the night. Rodriguez removed MC from the legal and physical custody of

4

both Brianna and Domonique at that time, and the Department exercised a seventy-two-hour hold.

At the probable-cause hearing on September 4, 2024, Brianna and Domonique waived the finding of probable cause. The court thus entered an order finding probable cause that emergency conditions existed that necessitated the removal of MC from Brianna and Domonique's custody and that she should remain in the custody of the Department.

On the same day, the Department moved to terminate reunification services, alleging both that MC was subjected to aggravated circumstances and that Brianna previously had her parental rights involuntarily terminated to MC's sibling. To support the aggravated-circumstances ground, the Department alleged that MC was removed under circumstances similar to those under which she was removed one year prior when the court adjudicated MC dependent-neglected and found her to be at risk of serious harm as a result of abuse, neglect, and parental unfitness. MC had been returned to her parents in June 2024 while in-home services continued to be provided. However, the parents failed to benefit from continuous participation in family services that began in October 2022 and continued to the time of the petition. Additionally, Brianna had a lengthy history with the Department. The Department also listed as an aggravated circumstance the death of MC's infant sibling under unexplained circumstances that were under investigation. As to the Department's other alleged basis for termination of reunification services, Brianna had had her parental rights to two other daughters, born in 2011 and 2014, involuntarily terminated in March 2018 in Hempstead County.

On October 8, 2024, the court entered an order adjudicating MC dependent-neglected and ordering that MC remain in the custody of the Department. The court continued the hearing on the motion to terminate reunification services to October 29 due to inadequate notice to the parties. Following the hearing, the court found that MC was subjected to aggravated circumstances in that the Department had made more than reasonable efforts to provide family services over the years, and there was "little to [no]" likelihood that the services would result in reunification. The court further found that Brianna had involuntarily lost custody of MC's siblings in March 2018. The court ordered the Department to cease all reunification services immediately.

On October 30, the Department filed a petition to terminate parental rights based on the same grounds as those cited in the motion to terminate reunification services. The hearing on the petition to terminate parental rights was held on January 7, 2025. Brianna did not appear, but her attorney was present.

Rodriguez testified that MC was in foster care from August 2023 until May 3, 2024. She was removed again on August 25 and remained in care at the time of the hearing. The Department had been providing services to Brianna on a consistent basis since January 2023. The ultimate threat to MC was inadequate supervision and failure to protect. Brianna's rights to MC's siblings were terminated due to her failure to protect, failure to provide, consistent failure to demonstrate parental fitness, and lack of capacity to protect and provide. According to Rodriguez, Brianna's behaviors in MC's case were consistent with those in the case of the two children to whom her rights were previously terminated.

At the time of the hearing, MC was living with her paternal aunt, where she had lived the first time she was removed from her mother's custody. MC had spent almost an entire year with her aunt and was doing great. MC had not seen either of her parents since the day she was removed from their custody. Rodriguez testified that it was in MC's best interest for Brianna's rights to be terminated because Brianna demonstrated a lack of ability to show consistent behavioral change despite the opportunities the Department provided to her, and MC is adoptable. The Department conducted an adoption data match on MC, and there were over 280 matches. Additionally, she was doing well with her aunt—also a potential adoption placement. Rodriguez did not recommend a final visit if the parental rights were terminated that day because neither parent had reached out to the Department in an effort to see MC or to check on her. Brianna's last communication to MC was on August 27 when she had asked a Department worker to "tell [MC1] I love her."

On cross-examination, Rodriguez testified that the Department provided home visits, parenting classes, counseling, SafeCare services, psychiatric evaluations, homemaking training, and "pretty much everything that we can offer from the department." MC's parents completed a parenting class, home visits, and homemaking services. The psychiatric evaluation was completed, and Brianna engaged in counseling. Brianna did not complete SafeCare, which is a program that takes place in the home working on parent and child relationships, health, safety, and basic parenting skills. The failure to complete SafeCare was significant due to Brianna's failure to show the ability to appropriately parent on a consistent basis. The home remained environmentally neglected and unsafe. Issues pertaining to a

7

failure to protect continued. An offender with a true finding continued to be allowed in the home, which posed a risk of harm to MC.

Lorie Jones, an investigator with the Arkansas State Police, testified that she investigated a maltreatment report on MC in June 2024. The result of her investigation was that MC was found to have been the victim of sexual contact by an underaged offender. MC was approximately two years old at the time of the sexual contact. Jones discussed her findings with Brianna, who admitted that she had allowed MC to be alone with her older child who had true findings of previous sexual-abuse incidents. Jones testified that Brianna "basically blamed the court system" for the incident.

Jones testified that she had previous contact with Brianna when she worked for the Department and received a report on January 3, 2020, regarding concerns that Brianna and Domonique were intoxicated and had left their one-month-old daughter, MC, outside in a bassinet or play pen. Jones went to the home, finding it to be in "very, very bad" condition environmentally. She saw dirty adult diapers with feces and urine on the floor as well as molded food and food cans.

At the conclusion of the hearing, the court ruled from the bench, terminating Brianna's parental rights and stating that relative adoption was the goal. The court's written order was entered on January 21, 2025, finding that MC had been subjected to aggravated circumstances pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(i) (Supp. 2023) in that there was little likelihood that continued services to the family would result in successful reunification and that Brianna's parental rights had previously been involuntarily terminated

as to a child pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)*. The court also found by clear and convincing evidence that termination of parental rights was in MC's best interest. Specifically, the court found that the Department had identified a large number of potential matches for adoption and that MC currently was placed with a relative who was willing and able to adopt her. As to the potential harm, the court found that MC would be subjected to potential harm if returned to Brianna because she had demonstrated a repeated inability or unwillingness to protect MC from dangerous situations. Brianna filed a timely notice of appeal.

Arkansas Supreme Court Rule 6-9(j) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit brief accompanied by a motion to withdraw if, after studying the record and researching the law, counsel determines that there is no meritorious basis for appeal. Ark. Sup. Ct. R. 6-9(j)(1); *Willingham v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 74, 706 S.W.3d 761. The argument section of the brief must list all the rulings that were adverse to the appellant "made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose" and explain why each ruling is not a meritorious ground for reversal. Ark. S. Ct. R. 6-9(j)(1)(A); *see also McCullar v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 15, 683 S.W.3d 202. The statement of the case also must contain all rulings adverse to the appellant made by the circuit court at the hearing. Ark. S. Ct. R. 6-9(j)(1)(B); *see also Willingham, supra*. In evaluating a no-merit brief, we decide whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Willingham, supra; McCullar, supra.*

In the present case, there were no adverse rulings other than the termination of parental rights. In order to terminate parental rights, a court must determine that the parent is unfit and that termination is in the best interest of the child. *Rogers v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 417, 654 S.W.3d 706. Proving a parent is unfit requires the court to find at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B); *Rogers, supra*. A finding that termination of parental rights is in the child's best interest requires the court to consider the potential harm to the child caused by returning her to her parent and the likelihood of the child being adopted if the rights are terminated. Ark. Code Ann. § 9-27-341(b)(3)(A); *Rogers, supra*. The finding that termination is in the child's best interest also must be supported by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). "Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established." *Anderson v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 791, at 9, 387 S.W.3d 311, 316.

On appeal, we review cases of termination of parental rights de novo but do not reverse unless we find the circuit court's ruling to be clearly erroneous. *McCullar*, 2024 Ark. App. 15, 683 S.W.3d 202. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Anderson*, 2011 Ark. App. 791, at 9, 387 S.W.3d at 316.

10

Counsel's brief fully addresses the circuit court's findings of two separate statutory grounds for termination while acknowledging that only one ground is necessary to support the termination. The circuit court found that Brianna had subjected MC to aggravated circumstances on the basis of its findings that there was little likelihood that services to the family would result in successful reunification and that Brianna's parental rights had been terminated involuntarily to another child. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*, *(4)*.

At the hearing, Rodriguez testified that MC had been removed from Brianna due to her failure to protect, failure to provide, and substance abuse. The Department had been providing services to Brianna for almost two years: services had begun long before MC was removed from the home. Brianna completed many services, but she did not complete all of them, including SafeCare. Brianna had demonstrated an inability to show consistent behavioral change despite the services provided. She continued to fail to provide a suitable and safe home, and there were multiple instances of an offender with true findings being allowed into the home in the presence of MC. A parent's completion of services does not automatically equate to that parent being capable of safe parenting. *See Barnes v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 618, 508 S.W.3d 917. In sum, Brianna failed to benefit from the services she was provided, signaling that continued services were unlikely to result in successful reunification. Moreover, in its no-reunification-services order, the circuit court found aggravated circumstances because there was little likelihood that continued services

11

would result in successful reunification. Brianna did not appeal this order, which also supports the finding of aggravated circumstances. *See Taylor v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 264. The court did not err in finding aggravated circumstances satisfying the requirements of Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)* as a ground for termination, and only one statutory ground is necessary.[4]

Turning to the best-interest analysis, the undisputed evidence was that MC is adoptable. She was currently living with her paternal aunt, and this was a potential adoption placement. The placement was going well and meeting all of MC's needs. In addition to the paternal aunt's willingness and ability to adopt MC, the Department found 280 matches for MC through the adoption data-match system. This evidence of adoptability is undisputed and was considered by the circuit court as stated in its order.

As to the potential-harm prong of the best-interest analysis, the same evidence that supports the court's finding of the aggravated-circumstances ground supports the potential-harm prong of its best-interest finding. *See Taylor*, 2018 Ark. App. 264 (citing *Miller v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 396, 525 S.W.3d 48). And as in *Taylor*, throughout the case, Brianna never appealed any finding that it would be contrary to MC's welfare to be placed in her custody. Therefore, these findings are conclusively established for purposes of

---

[4]Rodriguez also testified that Brianna had lost her parental rights to MC's older siblings; the court so found in its previous orders; and information on the previous termination of parental rights is contained in the pleadings—all of which support the circuit court's finding of a second statutory ground for termination. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)*.

appeal. *Taylor* (citing *Contreras v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510).

Having carefully examined the record and the no-merit brief, we hold that Brianna's counsel has complied with the requirements for a no-merit termination-of-parental-rights appeal and that the appeal is wholly without merit. We affirm the termination of Brianna's parental rights to MC and grant counsel's motion to withdraw as counsel.

Affirmed; motion to withdraw granted.

ABRAMSON and VIRDEN, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.