Cite as 2026 Ark. App. 249

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-25-794

| | | |
|---|---|---|
| | | Opinion Delivered April 22, 2026 |
| BREANNA TERRY | APPELLANT | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-24-67] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE LYNN WILLIAMS, JUDGE |
| | APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**CASEY R. TUCKER, Judge**

Breanna Terry appeals the Garland County Circuit Court's order terminating her parental rights to her minor child (MC1), who was born August 18, 2022.[1] Her attorney filed a no-merit brief and motion to withdraw asserting there are no issues of arguable merit for appeal. *See Linker-Flores v. Ark. Dep't of Hum. Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j). Pursuant to Arkansas Supreme Court Rule 6-9(j)(3), the clerk of this court sent Breanna a copy of her attorney's brief and motion and informed her of her right to file pro se points for reversal. Breanna did not file any points.

---

[1]The court also terminated Breanna's parental rights to her younger child, MC2; the termination of Breanna's parental rights to MC2 is the subject of a separate appeal—*Terry v. Arkansas Department of Human Services*, 2026 Ark. App. 247, ___ S.W.3d ___.

We affirm the order terminating Breanna's parental rights and grant counsel's motion to withdraw.

## I. *Relevant Facts*

Breanna has a history with the Arkansas Department of Human Services (the Department) beginning on September 3, 2022, when MC1 exhibited failure to thrive, and the Department found neglect due to failure to thrive and inadequate supervision. The Department exercised a seventy-two-hour hold on MC1 at that time. It returned MC1 to Breanna on September 6 following a team decision meeting, after which Breanna moved into a relative's home, and the Department opened a protective-services case. The Department provided Safe Care, items for infant care, and home visits.

On July 12, 2023, the Department filed a petition for emergency custody of MC1, which the Greene County Circuit Court granted. The basis for the petition was that Arkansas Methodist Medical Center reported to the Arkansas State Police Crimes Against Children Division that Breanna had brought MC1 in with a broken leg under suspicious circumstances on July 5. Breanna and her boyfriend, Austin McAbee, gave a variety of differing, conflicting, and unlikely accounts of how MC1's broken leg occurred. The final diagnosis stated that MC1 had a displaced comminuted fracture of the shaft of her left femur and that child abuse was suspected. MC1 was eleven months old. The Department removed MC1 from Breanna's physical and legal custody on July 6. The initial emergency hold expired on July 9, at which time the Department exercised a second hold due to the lack of change in the original circumstances.

The probable-cause hearing was held on July 19. The court found probable cause that the emergency conditions that caused removal still existed, and it ordered Breanna to view the video *The Clock is Ticking*; remain drug-free and submit to random drug screens; keep the Department informed of her address; participate in and complete parenting classes; submit to a mental-health evaluation and follow the resulting recommendations; obtain and maintain clean, safe, and stable housing with working utilities; obtain and maintain employment or sufficient income to support the family; and allow the Division of Children and Family Services access to her home. The court ordered MC1's putative father, Cameron King, to submit to genetic testing if he wished to participate in the case.

The adjudication hearing took place on August 30. Breanna appeared in person, and Cameron appeared via Zoom. The parties stipulated to the court's findings, including that the Department had been involved with the family and providing services since September 2022 and that MC1 was adjudicated dependent-neglected--by a preponderance of the evidence--in that her health and safety were in danger due to inadequate supervision and housing. The court set the goal of the case as reunification and approved the Department's case plan. It ordered the Department to arrange visitation and gave it the discretion to allow a trial home visit. The court also ordered Cameron King and Breanna's boyfriend, Austin, to submit to DNA testing and to maintain contact with the Department if they wished to participate in the case.

The case was transferred to the Garland County Circuit Court, after which the court held a review hearing on March 27, 2024. The court found that Breanna was compliant

3

with the case plan in that she had completed parenting classes in a previous protective-services case and was currently participating in parenting classes. Breanna also completed a mental-health assessment and was receiving therapy. Austin was partially compliant in that he had completed parenting classes in a previous protective-services case but had been dismissed from the current parenting classes due to excessive absences. Cameron King was partially compliant with the plan. He was not able to participate in the parenting classes because he lived in Missouri. Cameron was participating in visitation through Zoom and was preparing a room for MC1. The court ordered the Department to maintain custody of MC1 in order to protect MC1's health and safety and stated that the parents needed to complete additional parenting classes and demonstrate the ability to care for MC1. Breanna also needed to complete therapy. The court found that the Department had complied with the case plan and orders of the court. The goal of the case remained reunification with a concurrent goal of placement with relatives or fictive kin.

Following a hearing on June 19, the court entered an agreed permanency-planning order in which it found Breanna was partially compliant with the case plan. She completed SafeCare parenting in the previous protective-services case and completed the psychological evaluation. However, Breanna lacked stable housing and expressed her desire to work for a carnival, which would take her out of state. Breanna had canceled multiple visits with MC1 and had left visitation early on multiple occasions. Cameron had undergone DNA testing, which established that he is MC1's biological father. He was partially compliant with the plan and still needed to complete parenting classes. Cameron still lived in Missouri where

4

he continued to prepare a room for MC1 and continued to maintain contact with MC1 through Zoom visits. Austin was removed as a party from the case. The court ordered the Department to maintain custody of MC1. Breanna needed to establish stability and obtain and maintain stable, appropriate housing. The court found that the Department had complied with the case plan and the orders of the court. The Department had made reasonable efforts to provide family services and to finalize a permanency plan for MC1.

On October 2, the court held a review hearing and ordered MC1 to remain in the Department's custody. Breanna was not compliant with the case plan. Although she had completed some parenting classes, she was not in counseling and did not have stable housing or a job. Cameron still lived in Missouri and reported that he was employed. The plan was meeting MC1's special needs and best interest. The goal of the case remained reunification with a concurrent goal of placement with relatives or fictive kin.

A review was held on January 15, 2025, which resulted in the entry of an agreed order. Breanna was "marginally" compliant. She previously completed her parenting classes and attended family time via Zoom. She was not in counseling, did not have stable housing, and did not have reliable transportation. Cameron remained in Missouri. The Department had complied with the plan and the orders of the court and made reasonable efforts to provide family services to finalize a permanency plan for MC1. The goal of the case remained reunification with a concurrent goal of placement with relatives or fictive kin.

The court held a review hearing on May 21. The hearing combined this case and a companion case that involved MC1's full sister, MC2. The court found that Breanna was

not compliant with the case plan. She was not employed, was not attending therapy, and did not have appropriate housing. Breana was living with her boyfriend, and there were domestic-violence concerns in the home. Cameron continued to live in Missouri where an Interstate Compact on the Placement of Children (ICPC) request for placement had been denied due to his recent criminal history, the criminal history of other residents of the home, and unsanitary conditions in the home. MC1 was to remain in the custody of the Department. The court changed the goal of the case to adoption following termination of parental rights, with a concurrent goal of placement with relatives or fictive kin. The court found that the Department had complied with the case plan and orders of the court and made reasonable efforts to provide family services and to finalize a permanency plan for MC1.

The Department filed a petition for termination of parental rights on July 8, 2025. It alleged two statutory bases for termination pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B):[2] (i)*(a)* that the child had been adjudicated dependent-neglected and had continued out of the custody of the mother for twelve months and despite meaningful efforts by the Department to rehabilitate her and correct the conditions that caused the removal, the conditions had not been remedied; and (ix)*(a)(3)(A), (B)(i)* the parents had subjected the child to aggravated circumstances, meaning the court had determined that there was little likelihood that services to the family would result in successful reunification. The hearing

---

[2]Now codified at Ark. Code Ann. § 9-35-325(b)(3)(B) (Supp. 2025).

6

took place on September 10 to address this case as well as the companion case pertaining to MC2. Breanna failed to appear for the hearing.

The Department called Cecily Truslow as its first witness. Truslow was the case worker on both MC1's and MC2's cases. MC1's case began in Greene County and was transferred to Garland County after MC2's removal as a newborn in October 2023. The Department placed the girls together in a home in Garland County. Cameron King, who lived in Missouri, was established as the father of both children in October 2024. The Department then opened an ICPC case to determine whether Cameron would be a proper placement for the children. After Truslow notified him in late 2024 or early 2025 that he had been denied custody, Cameron did not contact her again. He had not completed any services to remedy the custody denial.

Breanna was living with Austin and his brother in Paragould. Austin's brother, who is a registered sex offender, paid the rent and utilities. Breanna had moved several times without notifying the Department. Truslow had not seen the house in which Breanna was currently living but testified that it was reported to have holes in the walls and floor. Breanna had completed a parenting class in the protective-services case in Greene County before MC1 and then MC2 were removed from her custody. Breanna started the parenting class as part of the current cases but never completed it. Breanna had completed a psychological evaluation in Greene County but was referred to undergo a second evaluation due to having completed the first one with Austin's participation. The Department set two appointments for Breanna to take the evaluation on her own, but she missed both. Breanna had not been

7

consistent with family time and was currently attending family time by Zoom. Breanna declined to participate in in-person visits, stating it was too far for her to drive. When the Department offered transportation, she again declined, stating it was too long to stay in a vehicle. In addition to the other shortcomings in Breanna's case, there was evidence that Breanna was the victim of ongoing domestic violence at the hands of Austin. At the time of the hearing, Austin was in jail on domestic-battery charges. Truslow opined that it was in the best interest of MC1 and MC2 for parental rights to be terminated.

On cross-examination, Truslow expressed concern about Breanna's mental health or disability affecting her ability to parent. Breanna did not retain information very well and needed concepts explained repeatedly. Truslow testified that Breanna "is not able to retain any education as far as taking care of her children."

The Department next called Sonya Cole, the adoption specialist assigned to this case. She had run the children's information through the data-match system to check for families that matched MC1's and MC2's characteristics. There were seventy-five potential matches with families willing to take both siblings as a group. When she ran the girls separately, there were 107 matches for MC1 and 204 matches for MC2. Cole was not aware of any conditions in the children that would make them unsuitable for adoption.

The court terminated Breanna's parental rights, finding that MC1 had been adjudicated dependent-neglected and had been out of Breanna's custody for twelve months, and despite meaningful efforts by the Department to rehabilitate her and correct the condition that caused removal, Breanna had not remedied those conditions. Specifically,

8

Breanna had not completed parenting classes since MC1 had been removed; her participation in family time had been sporadic; and her home was not an appropriate placement for MC1 because there were continuing concerns with domestic violence, and a sex offender lived in the home. The court found that MC1 also had remained out of the home of her noncustodial parent, Cameron, for twelve months. Cameron had not contacted the Department since the ICPC request was denied, and there was no evidence that he had attempted to remedy the reasons his home was not an appropriate placement for MC1. The court also found that termination of parental rights was in the best interest of MC1. There were seventy-five families interested in adopting a sibling group that shared characteristics with MC1 and MC2 as a group. There were 107 matches for MC1 individually. As to the potential for harm if MC1 was returned to either of her parents, the court found that neither parent had an appropriate home for the child. Breanna had not completed parenting classes, and her home was not safe. Cameron had not contacted the Department since his home was not approved. The court found that the Department had made reasonable efforts to finalize MC1's juvenile permanency plan and to provide reasonable and meaningful efforts to provide appropriate family services to the family. Despite these efforts and services, MC1 could not and should not be returned to her parents or placed in their custody. Breanna filed a timely notice of appeal.

## II. *No-Merit Brief*

Supreme Court Rule 6-9(j) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit brief accompanied by a motion to withdraw if, after

studying the record and researching the law, counsel determines that there is no meritorious basis for appeal. Ark. Sup. Ct. R. 6-9(j)(1); *Willingham v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 74, 706 S.W.3d 761.  Appellate counsel must include in the brief's argument section all the rulings that were adverse to the appellant on all objections, motions, and requests at the hearing from which the appeal arose and explain why each ruling is not a meritorious ground for reversal.  Ark. Sup. Ct. R. 6-9(j)(1)(A).  The statement of the case also should include the adverse rulings made by the circuit court at the hearing from which the appeal is taken.  Ark. Sup. Ct. R. 6-9(j)(1)(B).  In evaluating a no-merit brief, this court must determine whether an appeal would be wholly frivolous or whether there are any issues of arguable merit for appeal.  *Johnson v. Ark. Dep't of Hum. Servs.*, 2026 Ark. App. 5.

III. *Adverse Ruling*

In the case before us, there were no adverse rulings other than the termination of parental rights.  In order to terminate parental rights, the circuit court must determine that the parent is unfit and that termination is in the best interest of the child.  Ark. Code Ann. § 9-35-325(b)(3); *Jones v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 511.  To find that a parent is unfit, the circuit court must find at least one statutory ground for termination by clear and convincing evidence.  Ark. Code Ann. § 9-35-325(b)(3)(B); *Jones, supra*.  To find that terminating parental rights is in the child's best interest, the court must consider the potential harm should the child be returned to her parents and the likelihood the child will be adopted should the parental rights be terminated.  Ark. Code Ann. § 9-35-325(b)(3)(A); *Jones, supra*.  An order forever terminating parental rights must be based on findings by clear

10

and convincing evidence. Ark. Code Ann. § 9-35-325(b)(3). "Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established." *Anderson v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 791, at 9, 387 S.W.3d 311, 316.

On appeal, our review of termination-of-parental-rights cases is de novo, but we do not reverse unless we find the circuit court's order to be clearly erroneous. *McCuller v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 15, 683 S.W.3d 202. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Anderson*, 2011 Ark. App. 791, at 9, 387 S.W.3d at 316.

Appellate counsel thoroughly addressed the circuit court's finding of one statutory ground for termination and its finding that termination is in MC1's best interest. The circuit court based its termination decision on the failure-to-remedy ground found at Ark. Code Ann. § 9-35-325-(b)(3)(B)(i)*(a)*. For the Department to prevail on this statutory ground, it must prove four factors: (1) that the juvenile was adjudicated dependent-neglected, (2) that the juvenile continued out of the custody of her parent for twelve months, (3) that the parent failed to remedy the cause for the removal, and (4) this failure occurred despite meaningful efforts by the Department to rehabilitate the parent and correct the conditions that caused the removal. Ark. Code Ann. § 9-35-325(b)(3)(B)(i)*(a)(1)*; *Selsor v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 182, 516 S.W.3d 314. These required factors are found in this case.

11

The Department removed MC1 from Breanna's custody on July 6, 2023. MC1 was adjudicated dependent-neglected on August 30, 2023. The court terminated Breanna's parental rights in September 2025, when MC1 had been out of her mother's custody for over two years. Clear and convincing evidence of Breanna's failure to remedy the cause for removal was presented at the hearing. Breanna had failed to complete parenting classes since MC1's removal. She had moved frequently, failing to keep the Department informed of her addresses. Breanna had moved out of state at least once to work for a carnival and had moved back in state without informing the Department. Breanna had not completed the psychological evaluation she was ordered to complete outside the presence of her boyfriend. She had not maintained steady employment or transportation. At the time of the hearing, Breanna was living in a house with her boyfriend, who was in jail for continuing domestic-abuse concerns; and her boyfriend's brother, who is a registered sex offender. Breanna had been sporadic in participating in family time with MC1 and ultimately attended by Zoom because she did not want to make the long drive or even ride in Department-provided transportation to exercise visitation in person. Throughout the case, the Department offered services and complied with the case plan and court orders. These facts constitute clear and convincing evidence that Breanna failed to remedy the causes of MC1's removal.

The court's finding that termination was in MC1's best interest was also supported by clear and convincing evidence. The adoption specialist testified that she found seventy-five matches for families that are willing to adopt MC1 and her younger sister, MC2, as a group. As to MC1 individually, there were 107 matches for adoption. The specialist did

12

not know of any conditions that would make MC1 not adoptable. As to the potential-harm prong of the best-interest analysis, the court considered that Breanna had not completed parenting classes since MC1's removal and that her home was not safe for MC1. Clear and convincing evidence supports the court's determination that terminating Breanna's parental rights was in MC1's best interest.

Having carefully examined the record and the no-merit brief, we hold that Breanna's counsel has complied with the requirements for a no-merit termination-of-parental-rights appeal and that there are no issues of arguable merit for appeal. We affirm the termination of Breanna's parental rights to MC1 and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HARRISON and WOOD, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.